948 A.2d 780

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Randy James HOUCK, Appellee.**

Supreme Court of Pennsylvania.

Argued March 3, 2008.

Decided June 16, 2008.

684

Peter Rosalsky, Esq., Defender Association of Philadelphia, Philadelphia, for Defenders Association of Philadelphia.

Francesco Lino Nepa, Esq., Allegheny County District Attorney's Office, for Commonwealth of Pennsylvania.

Scott Bruce Rudolf, Esq., Allegheny County Public Defender's Office, Pittsburgh, for Randy James Houck.

CASTILLE, C.J., and SAYLOR, EAKIN, BAER, TODD and McCAFFERY, JJ.

## OPINION

Justice BAER.

We granted review in this matter to consider whether a criminal defendant's waiver of a jury trial can be rendered invalid when he is informed at a jury waiver colloquy of a range of sentences he could face if convicted which is shorter than the sentence he eventually receives. The Superior Court answered this question in the affirmative because the trial court informed the defendant, Randy James Houck (Appellee), of a range of sentences that was less than the sentence he received following his conviction. While we ultimately conclude that the validity of a defendant's jury waiver can be compromised in certain contexts where a defendant is informed of a range of sentences that is shorter than the sentence later imposed, we also hold that, to be entitled to a remedy, a defendant must establish that he relied on the recitation of his sentence in making his decision to waive a jury trial. Because Appellee failed to demonstrate reliance in

this instance, we reverse the Superior Court to the extent it granted Appellee relief on his jury waiver claim.[1]

The facts of this case are relatively straightforward. On the night of October 24, 2001, a young woman (Victim) was walking from a bus stop to her parents' home in McCandless Township when a man grabbed her by the neck and told her, "Don't scream or I will kill you." Due to the assailant's tight grip, Victim was unable to breathe and lapsed into unconsciousness. Tr. Ct. Op. at 3. When Victim awoke later that night, she discovered that her pants and underwear were pulled down. In a state of panic, Victim immediately ran to a nearby house (the neighbors) and banged on the front door to request assistance. An ambulance was then summoned, which transported Victim to a nearby hospital.

While Victim was at the hospital, police were called to investigate the incident. At the crime scene, police discovered various personal items belonging to Victim strewn on the ground, as well as a used condom and a bottle of baby oil lying in the grass nearby. The police collected this evidence and submitted it to a crime lab for genetic testing. According to the record, Appellee was eventually identified as a suspect when a forensic science technician at the crime lab matched the sperm contained in the condom with Appellee's DNA profile, which was found in the Combined DNA Indexing System (CODIS) database.[2] In addition, these tests revealed that samples of genetic material taken from the outside of the condom matched DNA samples taken from Victim. Police then arrested Appellee and charged him with, *inter alia*, rape,

1. As detailed later in this opinion, the Superior Court vacated the judgment of sentence and remanded for resentencing to correct an error in the written sentencing order, which imposed the wrong sentence for the wrong crime. Super. Ct. Op. at 7–8. Our decision today does not affect this ruling.

2. Affidavit of Probable Cause, 7/29/02 at 3. The CODIS is a computer software program that operates local, state, and national databases of DNA profiles of convicted offenders. President's DNA Initiative, *available at* http://www.dna.gov/uses/solv ing-crimes/cold_cases/howdatabasesaid/codis/ (last viewed April 21, 2008).

attempted rape, aggravated assault, terroristic threats, and two counts of indecent assault.[3]

Prior to trial, Appellee claims that a proposal was made that he be tried without a jury. Appellee's Brief at 2; N.T. 2/17/04 at 9. Although the terms of this alleged proposal are not disclosed in the record or in his brief, it is undisputed that Appellee eventually agreed to waive his right to a jury trial and signed a written colloquy to that effect.[4] The trial court then conducted an oral jury waiver colloquy during which the judge explained to Appellee the nature of a jury trial and the significance of waiving one's right to a jury.[5] Notably, the court related the contents of the bills of information and explained for each charge the maximum potential sentences generally applicable for each offense provided under 18 Pa. C.S. §§ 1103–04. N.T. 2/17/04 at 4–5.[6,7]

**3.** 18 Pa.C.S. § 3121 (rape); 18 Pa.C.S. § 901(a) (attempt); 18 Pa.C.S. § 2702(a)(1) (aggravated assault); 18 Pa.C.S. § 2706 (terroristic threats); and 18 Pa.C.S. § 3126 (indecent assault).

**4.** As discussed later in this opinion, Appellee's counsel admitted that the written jury waiver colloquy did not include the length of Appellee's potential sentence. Arguably, this undermines the credibility of Appellee's argument, discussed below, that he was induced into waiving his jury rights based on a misrepresentation as to sentencing.

**5.** Specifically, the trial court explained to Appellee that he had a right to jury trial, that the jury would be selected randomly from the community, that he would have the opportunity to participate in the jury selection, and that the jury's verdict must be unanimous. N.T. 2/17/04 at 6.

**6.** 18 Pa.C.S. § 1103 states: "Except as provided in 42 Pa.C.S. § 9714 (relating to sentences for second and subsequent offenses), a person who has been convicted of a felony may be sentenced to imprisonment as follows:

(1) In the case of a felony of the first degree, for a term which shall be fixed by the court at not more than 20 years.
(2) In the case of a felony of the second degree, for a term which shall be fixed by the court at not more than ten years.
(3) In the case of a felony of the third degree, for a term which shall be fixed by the court at not more than seven years."
18 Pa.C.S. § 1104 states: "A person who has been convicted of a misdemeanor may be sentenced to imprisonment for a definite term which shall be fixed by the court and shall be not more than:

(1) Five years in the case of a misdemeanor of the first degree.
(2) Two years in the case of a misdemeanor of the second degree.
(3) One year in the case of a misdemeanor of the third degree."

At the conclusion of the oral colloquy, the Commonwealth sought to clarify Appellee's potential sentence by stating on the record that if the maximum sentences provided under 18 Pa.C.S. §§ 1103–04 were imposed consecutively on all counts, it would result in an aggregate sentence of 34½ to 69 years of imprisonment. N.T. 2/17/04 at 8–9. The Commonwealth's attorney then stated, "... I don't know if [the potential sentence] is part of the written colloquy or not...." *Id.* Relevant to the analysis that follows, Appellee's counsel responded to the above statement by conceding that the length of Appellee's possible sentence was not included in his written colloquy.[8]

The trial court ultimately accepted Appellee's waiver and the case proceeded to a non-jury trial. During the ensuing proceedings, the Commonwealth presented the testimony of several witnesses, including Victim, the neighbors from whom

7. The trial court stated:

I have a criminal action at 200211794, where the District Attorney by information charges that on or about October 24 of 2001, in the County of Allegheny, you did commit the following criminal acts. Count one, rape. That is a felony one, punishable by 20 years maximum and a $25,000 maximum fine.

You are specifically charged with engaging in sexual intercourse with [the victim], who was unconscious or knew [sic] that [the victim] was unaware of sexual intercourse. At the second count you are charged with criminal attempt. That is a feloney [sic] of the first degree punishable by 20 years and a $25,000 maximum fine. Here you are being charged with attempt to commit the crime of rape.

Also at counts three and four of indecent assault, misdemeanor two. Both are two-year maximum jail sentences and a $5,000 maximum fine. You are charged with having indecent contact with [the victim].

Count five, aggravated assault. This is a felony of the first degree, punishable by 20 years and a $25,000 maximum fine. Specifically again charged with intentionally causing and knowingly and recklessly causing serious bodily injury to [the victim] under circumstances manifesting extreme indifference to the value of human life after grabbing her and choking her into unconsciousness.

Count six, terroristic threats. That is a misdemeanor punishable by five years and $10,000 maximum fine. It is alleged that you threatened to commit murder or homicide in order to terrorize the victim.

N.T., 2/17/04, at 4–5.

8. *Id.* Our review of the written jury waiver included in the original record verifies that there is no mention of Appellee's potential sentence contained therein.

Victim sought assistance following the attack, and various forensic experts. The record indicates that the Commonwealth's evidence tended to link Appellee's DNA to the sperm found in the condom, while linking Victim's DNA to the genetic material found on the outside of the condom. The Commonwealth's evidence also suggested that Victim's genetic material found on the condom could not have come from mere casual contact with her. The defense, in contrast, did not call any witnesses of its own or present other evidence at trial.

Appellee was found guilty of the aforementioned crimes and, shortly thereafter, he was designated a Sexually Violent Predator (SVP) pursuant to Pennsylvania's Registration of Sexual Offenders Act (Mcgan's Law II), 42 Pa.C.S. § 9791 *et seq.* Prior to sentencing, the Commonwealth filed a notice of intent to pursue the mandatory sentence enhancements provided under the recidivist statute, 42 Pa.C.S. § 9714.[9] The court then held a sentencing hearing, during which Appellee's attorney commented that the Commonwealth should have informed Appellee at the oral colloquy that it intended to pursue an enhanced penalty. N.T. 7/7/04 at 28. The court then entered an order imposing an enhanced sentence of 25 to 50 years of imprisonment for rape, and consecutive sentences of 10 to 20 years of imprisonment for aggravated assault, 1½ to 3 years of imprisonment for terroristic threats, and 1 to 2 years for

9.  N.T. 7/7/04 at 27.  The recidivist statute at 42 Pa.C.S. § 9714 provides:

(a) MANDATORY SENTENCE.—

(1) Any person who is convicted in any court of this Commonwealth of a crime of violence shall, if at the time of the commission of the current offense the person had previously been convicted of a crime of violence, be sentenced to a minimum sentence of at least ten years of total confinement....

(2) Where the person had at the time of the commission of the current offense previously been convicted of two or more such crimes of violence arising from separate criminal transactions, the person shall be sentenced to a minimum sentence of at least 25 years of total confinement, notwithstanding any other provision of this title or other statute to the contrary....

(A.1) MANDATORY MAXIMUM.—An offender sentenced to a mandatory minimum sentence under this section shall be sentenced to a maximum sentence equal to twice the mandatory minimum sentence, notwithstanding 18 Pa.C.S. § 1103 (relating to sentence of imprisonment for felony) or any other provision ... to the contrary.

attempted rape. Super. Ct. Op. at 2. In total, Appellee received an aggregate sentence of 37½ to 75 years of imprisonment, which slightly exceeded the range of sentences recited at the oral colloquy.[10]

Appellee appealed to the Superior Court,[11] arguing, *inter alia*, that his constitutional right to a jury trial and his due process rights were violated when he received a sentence in excess of the range recited by the trial court at the oral colloquy.[12] In this regard, Appellee claimed that his waiver was involuntary because he was misled by the trial court into believing that his possible sentence would be shorter than was in fact the case. The trial court then issued an opinion stating that Appellee's jury waiver was valid because there was no evidence Appellee had relied on the recitation of his sentence at the oral colloquy.

A three-judge panel of the Superior Court vacated Appellee's judgment of sentence and remanded for resentencing in an unpublished memorandum decision. Before addressing Appellee's jury waiver claim, however, the court initially observed that the trial court's written sentencing order erroneously reflected a 1 to 2 year sentence of imprisonment for attempted rape instead of 30 to 60 months for indecent assault, which was the sentence recited by the judge at sentencing. In light of this discrepancy, the Superior Court instructed the trial court to correct the written order on remand.

The Superior Court then addressed Appellee's claim that his jury waiver was involuntary. In this regard, the court noted

10. As discussed *infra*, the written sentencing order imposed a sentence for attempted rape, while at the sentencing hearing, the judge imposed a 30 to 60 month sentence for Appellant's indecent assault convictions, with no further penalty for attempted rape.

11. For the sake of completeness, we note that Appellee's direct appeal rights were reinstated *nunc pro tunc* on June 23, 2005. Tr. Ct. Order 6/23/05.

12. Although we only granted review to address the validity of Appellee's jury waiver, there were other claims raised by Appellee on appeal, including a challenge to Appellee's SVP designation, various sufficiency of the evidence claims, and two merger claims. These challenges were rejected by the Superior Court on appeal.

that trial courts are not required to inform defendants of their possible sentences at jury waiver colloquies. However, the Superior Court also noted that, in *Commonwealth v. Golinsky*, 426 Pa.Super. 319, 626 A.2d 1224, 1227–29 (1993), it had recognized that there are circumstances where a jury waiver should be set aside where a defendant relies on a range of possible sentences recited at a colloquy that is shorter than the sentence actually imposed.

In *Golinsky*, 626 A.2d at 1226, the defendant was arrested and charged with several drug-related offenses. Prior to trial, the trial court held an oral jury waiver colloquy during which the court recited the maximum sentences the defendant could face if convicted. The defendant then waived his right to a jury and the case proceeded to trial. When the trial court found the defendant guilty, the Commonwealth filed a notice of its intent to seek the mandatory sentences as provided under 18 Pa.C.S. § 7508, which the trial court later imposed. On appeal to the Superior Court, the defendant argued that his jury waiver was involuntary because he was not made aware that he could be subject to mandatory minimum sentences. *Id.* at 1227.

In its opinion, the Superior Court in *Golinsky* recognized that the voluntariness of a jury waiver can be vitiated if a defendant demonstrates that he relied on a sentencing misrepresentation when he made his decision to waive a jury trial. *Golinsky*, 626 A.2d at 1228–29 (citing *Commonwealth v. Byng*, 364 Pa.Super. 636, 528 A.2d 983, 985 (1987)). Nevertheless, the Superior Court determined that the defendant was not entitled to relief because the trial court did not actually misrepresent the sentencing ranges at the colloquy. *Id.* at 1229. Furthermore, the Superior Court opined that, even if the trial court did make a misrepresentation, the defendant failed to demonstrate that the length of his sentence was a relevant factor in his decision to waive a jury trial. *Id.*

With *Golinsky* in mind, the Superior Court in this case acknowledged that the trial court specifically pointed out that Appellee could be subject to the maximum potential sentences listed in 18 Pa.C.S. §§ 1103–04. The Superior Court also

observed that the trial court failed to clarify that Appellee could face an enhanced sentence under the recidivist statute, 42 Pa.C.S. § 9714. The court then applied the rule in *Golinsky*—that a *"misrepresentation" of a sentence can vitiate the voluntariness of a jury waiver*—and remanded to the trial court with instructions to resentence Appellee within the range recited at the oral waiver colloquy.[13] *Notably, the Superior Court did not address whether Appellee relied on the sentences recited by the trial court.*

On February 21, 2007, the Commonwealth filed a petition for allowance of appeal seeking to challenge the Superior Court's conclusion that Appellee was entitled to resentencing on his jury waiver claim. In response, Appellee filed a cross-petition raising other claims not pertinent to the instant matter.[14] On September 19, 2007, this Court granted the Commonwealth's petition while denying Appellee's cross-petition. Thus, the sole issue before this Court is whether Appellee's jury trial waiver was rendered invalid because the trial court recited a range of possible sentences at the oral jury waiver colloquy that was less than the sentence Appellee eventually received.

■ In its brief, the Commonwealth contends that the Superior Court's decision improperly expands the information that a trial court must communicate to a defendant at the time of his jury waiver. According to the Commonwealth, there are only three essential "ingredients" that a defendant needs to know to understand the nature of a jury trial and the

13. While the Superior Court may not have intended any pejorative implication from its application of the term "misrepresentation" as set forth in *Golinsky*, we note with absoluteness that none should be inferred. When the trial judge as a matter of discretion and, in fact, courtesy informed Appellee of the maximum sentences for each crime set forth in the bill of information, he neither knew nor should have known of the applicability of the recidivist statute, 42 Pa.C.S. § 9714. Thus, the trial court misstatement leading to this case was understandably inadvertent.

14. These claims included a challenge to Appellee's SVP designation, a challenge to the sufficiency of the evidence supporting certain convictions, and claims that some of his convictions and sentences should have merged.

significance of waiving one's right to a jury: 1) that the jury will be chosen from members of the community; 2) that the accused is entitled to participate in the selection of the jury panel; and 3) that the verdict be unanimous. *See Common-wealth v. O'Donnell,* 559 Pa. 320, 740 A.2d 198, 207–08 (1999) (stating that the essential "ingredients" necessary to under-stand the significance of waiving one's right to a jury are "that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel."). The Commonwealth concludes that, where, as here, a defendant is cognizant of these ingredients, a jury waiver is valid regardless of the possible sentence.

Alternatively, the Commonwealth argues that, even if this Court recognizes the rule set forth in *Golinsky* that the voluntariness of a jury waiver can be vitiated due to a sentenc-ing misrepresentation, the Superior Court failed to evaluate whether Appellee relied on the potential range of sentences recited by the trial court when he made his decision to waive a jury trial. The Commonwealth claims that the Superior Court simply presumed Appellee's reliance, which was improper. In addition, the Commonwealth opines that it would be nearly impossible for Appellee to demonstrate credibly that he would have waived his right to a jury trial when faced with a sentence of 34½ to 69 years, but would opt for a jury trial when faced with a slightly longer sentence of 37½ to 75 years.

In response, Appellee admits that a trial court is not required to inform defendants of the potential sentence they could face if convicted. However, Appellee asserts that, where, as here, the trial court goes beyond the three essential ingredients of a jury trial, *see O'Donnell,* 740 A.2d at 207–08, by choosing to broach the subject of sentencing, the court cannot thereafter impose a sentence in excess of the range recited at the colloquy without offending principles of due process.[15] Appellee then suggests that, where a court imposes

---

**15.** On a related note, Appellee also claims that imposing a sentence in excess of the range recited at the colloquy would violate the trial court's "promise" not to impose a greater sentence in exchange for Appellee's

a sentence exceeding the range recited at the colloquy, the proper remedy is to remand the case to the lower court for resentencing in accordance with the sentence stated at the colloquy, or alternatively, to remand the case to the lower court for a jury trial.[16]

Appellee also takes issue with the Commonwealth's contention that he was required to demonstrate reliance. Without citing to any authority, Appellee argues that there should be a presumption that criminal defendants listen to judges at colloquies and make decisions based on the judge's statements. In Appellee's view, to hold otherwise would be a tacit acknowledgement that a court's admonitions during colloquies are meaningless.

■ Preliminarily, we note that criminal defendants have a constitutionally guaranteed right to a trial by jury. U.S. Const. amend. VI. In all cases, a defendant may waive a jury trial with approval by a judge of the court in which the case is pending. Pa.R.Crim.P. 620. To be valid, it is well settled that a jury waiver must be knowing and voluntary, and the accused must be aware of the essential ingredients inherent to a jury trial. *See Commonwealth v. Mallory*, 941 A.2d 686, 696–97 (Pa.2008); *O'Donnell*, 740 A.2d at 212; *Commonwealth v. Williams*, 454 Pa. 368, 312 A.2d 597, 600 (1973). As noted earlier in this opinion, the three ingredients are: 1) that the

jury waiver. Appellee's Brief at 8. While Appellee's argument in this regard is less than clear, it appears that Appellee is contending that he somehow entered into a negotiated sentence that the trial court was bound to honor. However, Appellee is confusing the waiver of a defendant's right to a jury trial with entering a guilty plea in exchange for a negotiated sentence. As Appellee does not develop this argument beyond mere assertions that he was entitled to the benefit of the court's "promise," we decline to address this claim.

16. As noted, the Superior Court granted Appellee relief by remanding for resentencing within the range recited at the colloquy. However, because Appellee is claiming that his constitutional right to a jury trial was violated by the recitation of his sentence, he is essentially complaining that he was deprived of a jury trial. Thus, the question arises as to whether the appropriate remedy would be to remand for a jury trial as opposed to resentencing. Because we ultimately conclude that Appellee is not entitled to relief, we leave for another day what the proper remedy would be in these circumstances.

jury be chosen from members of the community (*i.e.*, a jury of one's peers), 2) that the accused be allowed to participate in the selection of the jury panel, and 3) that the verdict be unanimous. *Mallory*, 941 A.2d at 697.[17]

With these principles in mind, we observe that, in *Commonwealth v. Boyd*, 461 Pa. 17, 334 A.2d 610 (1975), this Court declined to add to the list of elements that a criminal defendant must know to execute a valid jury waiver. In *Boyd*, the defendant argued that his jury waiver was not made knowingly and intelligently because he was not advised on the record of the possible sentences he could receive if convicted. *Id.* at 614–15. We rejected the defendant's argument, noting that, in contrast to entering a guilty plea, waiving one's right to a jury does not affect a court's sentencing alternatives, and therefore, a defendant who waives a jury trial has not relinquished any right as to sentencing. *Id.* at 615 n. 9. In reaching this conclusion, we implicitly recognized that a potential sentence is not one of the essential ingredients necessary for a defendant to understand the nature of a jury trial.

In light of *Boyd*, it is clear that a defendant does not need to know his possible sentence to execute a voluntary jury trial waiver. Nevertheless, the Superior Court has developed a line of cases recognizing that the voluntariness of a jury waiver could be vitiated where reliance on a sentencing misrepresentation is demonstrated. *Golinsky*, 626 A.2d at 1228–29; *Byng*, 528 A.2d at 985; *Commonwealth v. Carey*, 235 Pa.Super. 366, 340 A.2d 509 (1975). In *Byng*, 528 A.2d at 985, the trial court held an oral jury waiver colloquy during which the court advised the defendant of the potential maximum sentence he could receive for certain crimes. The defendant then waived his right to a jury trial and was convicted of three crimes. *Id.* at 984–85. Subsequently, the defendant claimed that his jury waiver was involuntary because the court failed

**17.** We also note that the question presented in this case, regarding whether a representation as to sentencing can invalidate an otherwise valid jury waiver, is a question of law. Accordingly, our scope of review is plenary and our standard of review is *de novo*. *Commonwealth v. Cousin*, 585 Pa. 287, 888 A.2d 710 (2005).

to state the sentence he could receive if one of his charges was graded as a second-degree felony. In rejecting the defendant's argument, the Superior Court explained that a defendant is required to demonstrate reliance because, although a possible sentence can influence one's decision to waive a jury trial, it is not essential to understanding the nature of the right being waived. *Id.* (citing *Boyd,* 334 A.2d at 615). Because the defendant failed to meet this burden, the court held that no relief was due.

In *Carey,* 340 A.2d at 510, the defendant's attorney assured the defendant that he would face only 6 to 23 months of imprisonment if he waived his right to a jury trial. Relying on this representation, the defendant waived his right to a jury and was convicted. *Id.* The court then sentenced him to 5 to 10 years of imprisonment instead of 6 to 23 months. *Id.* On appeal, the defendant claimed his jury waiver was involuntary because he relied on his counsel's erroneous advice. The court accepted this argument, but cautioned that, because it would be relatively common for a disappointed defendant to claim that he was induced into waiving his rights based on an attorney's advice, a defendant must provide some corroborating evidence to demonstrate reliance. Because the court found that there was corroborating evidence in the record indicating that defendant would not have waived his right to a jury but for the sentencing misrepresentation, the court vacated the defendant's sentence and remanded the case for a new trial. *Id.* at 512–13.

In light of *Golinsky, Byng,* and *Carey,* and after careful consideration of the parties' respective arguments, we are persuaded that the voluntariness of a jury waiver can be undermined where the defendant is informed of a range of potential sentences at a jury waiver colloquy that is less than the sentence eventually imposed. However, we agree with the Commonwealth that if a defendant seeks to invalidate an otherwise valid jury waiver based on a trial court's recitation of his or her potential sentence, the defendant should be required to demonstrate that his or her understanding of the length of the potential sentence was a material factor in

making the decision to waive a jury trial. This requirement not only comports with *Boyd*, which recognized that the length of one's sentence is not necessary to understanding the nature of a jury trial, it is also informed by our acknowledgement that, where a defendant relies on a potential range of sentences when waiving his right to a jury, then the waiver is, in a real sense, involuntary.

Appellee suggests that we should presume reliance on the part of a defendant. However, it is the defendant's burden, and not the Commonwealth's, to establish that a jury waiver is invalid. *See e.g. O'Donnell,* 740 A.2d at 208 (rejecting a challenge to the validity of a jury waiver because the defendant failed to demonstrate whether her waiver was unknowing and unintelligent); *see also Commonwealth v. Hooks,* 483 Pa. 40, 394 A.2d 528, 532 (1978) (stating that it is the defendant's burden to prove the infirmity of an otherwise valid waiver). Because Appellee is claiming that his jury waiver was invalid based on a representation of his sentence, he is required to set forth evidence that would demonstrate that his waiver was either unknowing or involuntary. If we were to permit a presumption of prejudice to replace the defendant's burden, it would open the door for disappointed defendants to complain after the fact that they were induced into waiving their right to a jury trial when, in actuality, the length of their sentence was immaterial to their decision. Such a result would, in essence, provide defendants with a second bite at the sentencing apple. It would also have a chilling effect on the information courts provide at colloquies because judges would be hesitant to volunteer information out of concern that they might unwittingly provide a basis for a defendant to invalidate an otherwise valid jury waiver based on a mere technicality. We believe, on balance, that the most appropriate rule is one requiring defendants to show reliance on a recitation of a sentence to qualify for relief.

In the instant matter, the trial court specifically found that Appellee was not entitled to relief on his jury waiver claim because the record did not demonstrate reliance on the recitation of his sentence. Tr. Ct. Op. at 5. Based on our review of

the record, we agree with the trial court that there is a paucity of evidence suggesting that Appellee was focused on the length of his sentence when he waived his right to a jury. Furthermore, while Appellee correctly notes that his counsel commented at sentencing that the Commonwealth should have informed Appellee that it intended to pursue an enhanced sentence, such evidence does not in itself demonstrate that Appellee was induced into waiving his jury rights based on a representation of his sentence. As the Commonwealth noted, it strains credibility to conclude that Appellant would have waived his right to a jury trial when faced with a maximum sentence of 69 years, but would have opted for a jury trial when faced with a slightly longer maximum sentence of 75 years.

We also reiterate that Appellee signed and executed a written jury waiver colloquy, which Appellee's counsel admitted did not include the length of Appellee's potential sentence. N.T. 2/17/04 at 8–9. Arguably, Appellee would not have agreed to waive his jury rights by signing the written colloquy had he genuinely been concerned about his potential sentence. Moreover, in *Mallory*, 941 A.2d at 697, this Court recognized that the use of a written jury waiver form can, in certain contexts, be sufficient in itself to affect a valid jury waiver even if a trial court fails to provide an oral colloquy. Because the written colloquy in this case recited the essential ingredients of a jury trial, *see O'Donnell*, 740 A.2d at 207–08, a strong argument can be made that Appellee waived his right to a jury trial notwithstanding the oral colloquy. Accordingly, while we acknowledge that there are circumstances where a recitation of a sentence at an oral colloquy could impair the voluntariness of a previous written waiver, this is not such a case given the lack of reliance on the part of Appellee.

For the reasons outlined above, we conclude that Appellee failed to demonstrate that he relied on the range of sentences recited at the oral jury waiver colloquy when he waived his right to a jury trial. Accordingly, we reverse the order of the Superior Court vacating the judgment of sentence to the extent the order was based on Appellee's jury waiver claim,

and reinstate the judgment of sentence imposed by the trial court, with the correction to the written sentencing order noted in the Superior Court's opinion.[18]

Justice SAYLOR and EAKIN, Justice TODD and Justice McCAFFERY join the opinion.

Chief Justice CASTILLE files a concurring opinion in which Justice McCAFFERY joins.

Justice CASTILLE, concurring.

I join the Court's mandate, and I agree with much of the reasoning in the Majority Opinion. As the Majority notes, to be valid, a jury waiver need not say anything about sentencing; sentencing is not relevant to the right being waived in this matter. Therefore, in my judgment, a criminal defendant should not be permitted to extricate himself from an otherwise valid jury trial waiver premised upon a sentencing issue unless he can prove that his jury waiver was part of an **explicit agreement** for a sentencing concession. Otherwise, the defendant should be bound by his jury waiver. Hopes and after-the-fact inferences should be irrelevant. Thus, the rule I would adopt would be narrower, and less subjective, than the "reliance" rule announced by the Majority. Because no such promise or inducement was made to secure appellee's jury waiver here, the Majority correctly reverses the Superior Court.

With respect to the reliance rule that the Majority would adopt, I would also emphasize that counsel's role is not passive. At the early stage of proceedings when a jury waiver colloquy occurs, defense counsel is better informed than the trial judge as to which, if any, statutory sentence enhancements might ultimately apply in his client's particular case. Counsel should not be encouraged to sit silently by and

18. As noted earlier in this opinion, the Superior Court also remanded for resentencing based on the fact that the written sentencing order erroneously reflected a 1 to 2 year sentence of imprisonment for attempted rape instead of 30 to 60 months of imprisonment for indecent assault, which was the sentence recited by the court at the sentencing hearing. Our decision today does not disturb this ruling.

thereby "plant" claims of error to be raised in the event the client is unhappy with his sentence.

Justice McCAFFERY joins this concurring opinion.