J-S18043-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| PHILIP BAZZLEY | : | |
| | : | |
| Appellant | : | No. 1553 MDA 2019 |

Appeal from the PCRA Order Entered August 20, 2019
In the Court of Common Pleas of Berks County Criminal Division at
No(s):  CP-06-CR-0000831-2010

BEFORE:   KUNSELMAN, J., KING, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.:        **FILED: MAY 18, 2020**

Appellant, Philip Bazzley, appeals from the order entered in the Court of

Common Pleas of Berks County denying his first petition filed pursuant to the

Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546, following an

evidentiary hearing.  After a careful review, we affirm.

The relevant facts and procedural history are as follows: In October of

2001, H.C., who was six years old, and V.C., who was four years old, were

placed in a foster home in Douglassville, Berks County.  ***Commonwealth v.***

***Bazzley***, No 1014 MDA 2012, at 1 (Pa.Super. filed 6/7/13) (unpublished

memorandum).  Before and after school, the foster mother dropped off the

---

[*] Former Justice specially assigned to the Superior Court.

children at the home of Bazzley, who lived with his mother, brother, and grandmother. ***Id.*** at 1-2.

Over the course of several months, Bazzley repeatedly and regularly engaged in sexual conduct with the children until Bazzley's mother became aware of the inappropriate sexual contact.[1] ***Id.*** at 2. Although the sexual contact then ended, no further action was taken at this time, and in June of 2003, the children were removed from the foster family and placed elsewhere. ***Id.*** at 3.

> On April 1, 2008, the allegations of sexual abuse were reported to the Berks County District Attorney's Office. Bazzley admitted to some of the…sexual conduct and provided Detective Donna Tothero with a statement on June 24, 2009. N.T., 8/23/2011, at 24-33. On January 13, 2010, the Commonwealth filed a criminal complaint against Bazzley. On March 10, 2010, Bazzley filed a motion to transfer the case to juvenile court. Bazzley also filed an omnibus pretrial motion along with notice of his intent to present an insanity defense and an infancy defense. In his omnibus pretrial motion, Bazzley included, *inter alia*, a motion to permit the infancy defense, a motion to dismiss because of a violation of his due process rights, and a motion to dismiss based on his insanity defense.
>
> In response to Bazzley's intent to present an insanity defense, the trial court ordered Bazzley to participate in a mental health evaluation with the Commonwealth's expert[, Dr. Jerome Gottlieb]. On July 7, 2010, Bazzley filed a supplemental omnibus pretrial motion in which he alleged a violation of his Sixth Amendment right to counsel. The trial court denied Bazzley's request for a transfer to juvenile court and subsequently disposed of Bazzley['s] omnibus pretrial motion on December 8, 2010, by issuing an order and opinion denying Bazzley's claim.

---

[1] As this Court noted on direct appeal, the trial court found Bazzley was over the age of fourteen when he committed the sexual abuse. ***Id.*** at 20.

> Following a non-jury trial, the trial court found Bazzley guilty of [involuntary deviate sexual intercourse, indecent assault, indecent exposure, and open lewdness]. On April 20, 2012, the trial court imposed an aggregate sentence of 19½ to 60 years of incarceration followed by 11 years of probation. Bazzley filed a post-sentence motion on April 30, 2012, which the trial court denied on May 2, 2012.

**Bazzley**, No. 1014 MDA 2012, at 4-5.

Bazzley filed a timely notice of appeal, and this Court affirmed his judgment of sentence.[2] **See id.** Bazzley filed a petition for allowance of appeal, which our Supreme Court denied on January 21, 2014.

On or about April 11, 2014, Bazzley filed a timely, *pro se* PCRA petition, and the PCRA court appointed counsel to assist Bazzley. On December 7, 2018, counsel filed an amended PCRA petition on behalf of Bazzley, and the matter proceeded to an evidentiary hearing.

The PCRA court has summarized the relevant testimony offered at the PCRA evidentiary hearing as follows:

_____

[2] On direct appeal, Bazzley averred the following: the trial court erred in failing to transfer his case to juvenile court; the trial court erred in refusing to dismiss his case, which was brought in violation of Bazzley's due process rights, due to the delay in the Commonwealth filing charges against Bazzley; the trial court erred in prohibiting Bazzley from relying upon the infancy defense; the trial court erred in considering the statements Bazzley made to Adult Probation Officer Brown; the trial court erred in concluding Bazzley did not present sufficient evidence to sustain a mental health defense, as well as erred in finding Dr. Jerome Gottlieb's testimony to be more credible than Dr. Rotenberg's testimony; the trial court's verdict was against the weight of the evidence, particularly as it related to the trial court's rejection of the mental health defense; and Bazzley's sentence was excessive and an abuse of discretion.

At the PCRA hearing, [PCRA] counsel first called Dr. Larry Rotenberg who testified that he first met with [Bazzley] in 2010 prior to his trial and then again in 2017. (Notes of Testimony of PCRA Hearing on May 2, 2019 "PCRA Hearing N.T." at 7). During the interviews, [Bazzley] was very honest, cooperative and forthcoming. (PCRA Hearing N.T. 8). Dr. Rotenberg testified that [Bazzley] is very suggestable[,] and at the time of his trial, [he] was under the influence of a religious group, and in particular, of one individual who purportedly assured [Bazzley] that he would be acquitted of all charges at trial through divine intervention. *Id.* Dr. Rotenberg continued that at the time that a generous plea offer was proffered by the district attorney's office, [Bazzley's] mental capacity to appropriately weigh the benefits and advantages of the plea offer were compromised by his intense religious belief, which was delusional. (PCRA Hearing N.T. 9). [Dr. Rotenberg defined "delusional" as meaning "a fixed, false, unshared belief." *Id.*]

Dr. Rotenberg also interviewed [Bazzley's] mother, sister[,] and his first cousin. (PCRA Hearing N.T. 10). Interviews with [Bazzley's] family members indicated that at the time of the plea offer and trial, [Bazzley] was in a "weakened state of mind and was not really in a position to make a decision about the plea offer." *Id.* Further, Dr. Rotenberg opined that [Bazzley's] heightened vulnerability made him especially susceptible to the sway of individuals in [Bazzley's] church whom [Bazzley] referred to as "prophets." (PCRA Hearing N.T. 11).

After interviewing [Bazzley] in 2017, Dr. Rotenberg diagnosed [Bazzley] with schizoid personality disorder and with a learning disability noting [Bazzley's] verbal I.Q. of 74. (PCRA Hearing N.T. 14). [Bazzley's] religious preoccupation, which Dr. Rotenberg equivocated to delusion, coupled with the nature of the charges[,] caused [Bazzley] to isolate himself and rendered [Bazzley] "incapable of seeking other and more constructive advice." *Id.* Dr. Rotenberg testified his opinion was that [Bazzley] was not competent to make a decision as to the plea bargain because of his low I.Q. and his delusional state at the time. (PCRA Hearing N.T. 12). A significant basis of Dr. Rotenberg's opinion was that the plea offer was so generous that no adult would decline such an offer and that [Bazzley's] decision to reject the offer was so contrary to his own interest that it should have triggered a supplemental psychiatric evaluation to determine whether [Bazzley] was competent to refuse the offer. (PCRA Hearing N.T. 12-13).

On cross-examination, Dr. Rotenberg indicated that he had not earlier discussed the issue of the plea agreement with [Bazzley] and that all [of] the information garnered regarding the current issue was gleaned from his conversations with [Bazzley] in 2017. (PCRA Hearing N.T. 17-19). Further, Dr. Rotenberg opined that the issue of [Bazzley's] competency to stand trial and [Bazzley's] competency to accept or reject a plea offer were different standards. (PCRA Hearing N.T. 19).

Tiffany Bazzley, [who is Bazzley's] sister, testified that she spoke with [Bazzley's] Trial Counsel numerous times leading up to and during the trial. (PCRA Hearing N.T. 22). Tiffany explained that she told Trial Counsel that [Bazzley made statements] to her on several occasions regarding the "prophets" and having visions of being delivered from the case. *Id.* This, Tiffany believed, indicated that [Bazzley] was not competent to stand trial. *Id.* According to Tiffany, Trial Counsel responded that "if he would have knew [*sic*] that then, then he would not had [*sic*] him stand trial." *Id.* Tiffany further testified that she and [Bazzley] normally have a good relationship, but that at the time of the trial, [Bazzley] was distant and that when she would talk to [Bazzley], he seemed like he didn't understand. (PCRA Hearing NT. 24).

Tiffany observed Trial Counsel explain to [Bazzley] that he believed a bench trial [as opposed to a jury trial] would be a better option for [Bazzley] to avoid further embarrassment. (PCRA Hearing N.T. 23). Tiffany stated that Trial Counsel was not expecting [Bazzley] to receive the sentence imposed. (PCRA Hearing N.T. 24). While she asserted that she was available to testify at trial that [Bazzley] was not competent enough to testify on his own behalf, Trial Counsel indicated to her that he didn't believe that Tiffany's [testimony] would be helpful. (PCRA [Hearing] N.T. 24-25).

Valerie Bazzley, [who is Bazzley's] mother, testified that she was present during discussions between [Bazzley] and Trial Counsel in which Trial Counsel advised that a bench trial would be more advantageous to [Bazzley] regarding [Bazzley's] performance before the jury and his understanding of the medical terms involved. (PCRA Hearing N.T. 29). Valerie did not observe Trial Counsel discussing the plea agreement with [Bazzley], but [she] stated that Trial Counsel informed [Bazzley] that the decision had to be made immediately. (PCRA Hearing N.T. 30).

Valerie indicated that at the time of the trial, [Bazzley] was unresponsive to her efforts to communicate with him and that

[Bazzley] was not eating or sleeping. (PCRA Hearing N.T. 31). [Bazzley] informed Valerie about two individuals who told him that he would go free and not have to serve any time; however, Valerie did not discuss these revelations with Trial Counsel. (PCRA Hearing N.T. 31-32). Valerie was able to testify at [Bazzley's] trial and spoke to Trial Counsel about testifying. (PCRA Hearing N.T. 32). Valerie testified that she repeatedly informed Trial Counsel of [Bazzley's] mental condition and stressed that [Bazzley] was not competent. (PCRA Hearing N.T. 33).

[Bazzley] took the stand and testified that Trial Counsel presented three different plea offers from the Commonwealth regarding his case. (PCRA Hearing N.T. 35). [Bazzley] understood the first offer to be "very, very high," and he did not remember the second offer. *Id.* Upon receipt of the third offer, which [Bazzley] remembered being six to twenty-three months of county incarceration, Trial counsel gathered [Bazzley] and his family to discuss the plea, but that [Bazzley] eventually rejected the offer. *Id.* [Bazzley] stated that he rejected the third offer based on his encounter with two individuals, whom [Bazzley] referred to as "prophets." *Id.* The first individual told [Bazzley] that he had seen court papers ripped up on his behalf. *Id.* The other individual, whom [Bazzley] identified as "Jarvis," stat[ed] that "he was the head…of the band [he] was playing for," [and] told [Bazzley] to continue the fight because "God has you." (PCRA Hearing N.T. 36).

[Bazzley] acknowledged that Trial Counsel did discuss the plea offers with him, but that he didn't remember everything that Trial Counsel told him and that he did not understand. *Id.* [Bazzley] stated that Trial Counsel was "kind of like rushing" him to make a decision as to the plea offers and that [Bazzley] made his decision to reject the offer base don [*sic*] what the "prophets" had told him. (PCRA Hearing N.T. 36-37). [Bazzley] denied that Trial Counsel attempted to persuade him to accept the offer or that Trial Counsel explained the advantages and disadvantages of going to trial versus accepting the plea agreement. (PCRA Hearing N.T. 37).

When asked if he could describe a bench trial, [Bazzley] answered that "A bench—a Bench Trial is I [*sic*] sitting in front of the, I guess, Judge or something, yeah like, that's what I thought it was." *Id.* [Bazzley] testified that he did not know what a finder of fact, waiver[,] or a jury trial waiver colloquy was. (PCRA Hearing N.T. 37-38).

On cross-examination, [Bazzley] admitted that Trial Counsel was also representing him in another matter in Montgomery County, Pennsylvania, around the same time, in which he entered a guilty plea. (PCRA Hearing N.T. 39-40). [Bazzley] admitted that Trial Counsel explained various legal terms to [him] and to his family at the time of the trial, [al]though he claims that he did not understand them. (PCRA Hearing N.T. 40).

The Commonwealth called Trial Counsel, who testified that he was initially retained to represent [Bazzley] in the Montgomery County matter that resulted in [Bazzley] entering a plea in return for a favorable sentence. (PCRA Hearing N.T. 44). Upon initiation of the instant case, Trial Counsel became involved and represented [Bazzley] beginning with accompanying [Bazzley] when he turned himself in to law enforcement. (PCRA Hearing N.T. 45-46). Trial Counsel testified that he attempted to have the matter transferred to juvenile court and to have the matter dismissed for delay in prosecution, but both motions were denied. (PCRA Hearing N.T. 47).

During [Bazzley's] trial, Trial Counsel observed [Bazzley] and stated that he believed [Bazzley] to be limited, but not incompetent. *Id.* In his dealings with [Bazzley], Trial Counsel found that [Bazzley] understood the role of the attorneys and that of the judge, as well as [had] an understanding of the charges he was facing and the potential penalties that he faced, with no suggestion that [Bazzley] was so limited that he was prevented from understanding the court system. *Id.*

[Bazzley's] family indicated to Trial Counsel that [Bazzley] had a limited understanding of things, which prompted Trial Counsel to have [Bazzley] evaluated by Dr. Rotenberg. *Id.* Specifically, [Bazzley's] family told Trial Counsel that [Bazzley] had severe learning disabilities that were manifest at the time the crimes occurred. (PCRA Hearing N.T. 48). This information prompted Trial Counsel to have the evaluation performed to determine whether [Bazzley] could even form the criminal intent at that earlier age, providing what may possible [*sic*] be an insanity defense. *Id.* While Trial Counsel did not indicate that he questions [Bazzley's] competency to stand trial, competency was part of the standard evaluation performed by Dr. Rotenberg, as well as for M'Naughten Rule defense and for guilty but mentally ill. (PCRA Hearing N.T. 49).

Trial Counsel further explained that there was never a time when he believed that [Bazzley] misunderstood his words, but

that he may have had to repeat some things two or three times before he felt that [Bazzley] understood. (PCRA Hearing N.T. 49-50). Trial Counsel believed that [Bazzley] acknowledged what was being said and that Trial Counsel would hold meetings in the presence of family members, including [Bazzley's] sister and mother, so that they understood the issues[,] and if [Bazzley] wished, he could discuss with them as well. (PCRA Hearing N.T. 50). Whether in meetings alone with [Bazzley] or during those including [Bazzley's] family, Trial Counsel always believed that [Bazzley] understood what was happening. (PCRA Hearing N.T. 51). On the day of the plea deal, [Bazzley] told Trial Counsel that he would reject the offer based upon his faith, without indicating anything about visions or prophets, and therefore, the matter proceeded to trial. (PCRA Hearing N.T. 52).

Trial Counsel indicated that [Bazzley's] family did not mention anything as to the supposed prophets until after sentencing in the matter. *Id.* While Trial Counsel and [Bazzley] discussed [Bazzley's] religious beliefs on several occasions, those conversations did not pertain to [Bazzley] having visions himself or of the "prophets." *Id.* It wasn't until a few days after sentencing, [*sic*] that Trial Counsel stated he received a call from Tiffany indicating that [Bazzley] needed to speak with him about something important. *Id.* When Trial counsel went to visit [Bazzley,] [it] was the first time that [Bazzley] told Trial Counsel that the reason he had rejected the plea offer was due to the visions of prophets and to the statements that the prophets made. (PCRA Hearing N.T. 53).

Trial Counsel recounted his efforts in conducting discussions with the district attorney's office in attempting to find a non-trial resolution to the matter and that there were several plea offers presented. (PCRA Hearing N.T. 54). Trial Counsel communicated the plea offer to [Bazzley] and his family, and likewise to Dr [*sic*] Rotenberg, who agreed that the plea would provide a good outcome. (PCRA Hearing N.T. 55). In communicating the plea offer to [Bazzley], Trial Counsel remembered telling [Bazzley] that the offer was for only six months of county incarceration whereas [Bazzley] faced the possibility of years in jail due to the several counts that carried mandatory minimum sentences. (PCRA Hearing N.T. 56). The offer had to be accepted prior to the time of trial, which is not uncommon. *Id.*

Trial Counsel further explained that he suggested a bench trial [as opposed to a jury trial] for several reasons. (PCRA Hearing N.T. 58). First, the victims in the case were children[.]

- 8 -

Trial Counsel had witnessed prior jury trials where child victims were involved and believed that once a jury heard the testimony of the children, they are often unreceptive to further testimony or evidence, especially as to defenses. *Id.* Trial Counsel also believed that the complexity of the case, specifically as to the not guilty by reason of insanity defense, would cause issues as to the jury's understanding. *Id.* Trial Counsel believed that having a fact-finder that was experienced in the law and who would understand the complexity of an insanity defense would serve [Bazzley] better. (PCRA Hearing N.T. 58-59). Trial Counsel discussed the options and his recommendations with [Bazzley,] and [he] reviewed the jury trial waiver finding no indication that [Bazzley] did not understand the contents thereof. (PCRA Hearing N.T. 59).

Trial Counsel also addressed the reasons for not calling [Bazzley's] family as witnesses at trial. First, Trial Counsel believed that the family's testimony would be cumulative to Dr. Rotenberg's testimony and would not bode favorably in the courtroom. (PCRA Hearing N.T. 61). Next, given the narrow scope of allowable testimony, he felt that there was a strong possibility that the family might testify beyond that scope and confuse[,] or even worse, contradict Dr. Rotenberg's testimony. *Id.* Additionally, Trial Counsel wanted to ensure that testimony regarding [Bazzley's] Montgomery County case [and] the circumstances surrounding the case would not enter the record in the matter at trial. (PCRA Hearing N.T. 61-62). Trial Counsel was concerned about the possibility that prior accusations of inappropriate sexual conduct towards minors might enter the record. (PCRA Hearing N.T. 62). Specifically, there were prior accusations of sexual misconduct that weren't formally charged, but for which [Bazzley] was referred to treatment and his mother was heavily involved. *Id.* Trial Counsel did not want to risk exposure of the earlier accusations and wanted to limit the scope of evidence and testimony to the period during which the crimes occurred. (PCRA Hearing N.T. 63).

Trial Counsel testified that he has significant experience in dealing with clients with developmental issues, including those with learning disabilities, as well as clients who have been diagnosed with schizoid personality disorder. (PCRA Hearing N.T. 65-66). Trial Counsel admitted to encountering some problems communicating with [Bazzley]. (PCRA Hearing 66-67). Trial Counsel testified that [Bazzley's] family was very involved during the proceedings.…[T]hey were often present when he was

communicating with [Bazzley], and [he] would also separately provide information to the family as to the case status. *Id.* Trial Counsel believed that [Bazzley] clearly understood their discussions because [Bazzley] would acknowledge the conversations, would respond appropriately[,] or would ask follow-up questions. (PCRA Hearing N.T. 67).

PCRA Court Opinion, filed 8/20/19, at 4-10 (footnotes omitted).

By order and opinion entered on August 20, 2019, the PCRA court denied Bazzley's PCRA petition. This timely, counseled appeal followed. The PCRA court directed Bazzley to file a Pa.R.A.P. 1925(b) statement, Bazzley timely complied, and the PCRA court filed a brief opinion pursuant to Pa.R.A.P. 1925(a).

On appeal, Bazzley sets forth the following issues in his "Statement of the Questions Involved":

1. Did the PCRA Court err in denying post-conviction relief by giving little or no regard to the unrebutted testimony of Dr. Rotenberg?
2. Did the PCRA Court violate the standard set forth in *Commonwealth v. Napper*, 254 Pa.Super. 54, 60-61, 385 A.2d 521, 524 (1978) [(*en banc*),] by finding that [Trial Counsel's] explanation of a plea offer to [Bazzley] was adequate?
3. Did the PCRA Court err in denying the post-conviction relief given that the Constitutional rights of [Bazzley] were violated as regards [to] his right to a jury trial as there was an inadequate verbal colloquy on the waiver of his jury trial given his mental weaknesses and deficiencies and given that the pre-printed "Jury Trial Waiver Colloquy" fill in the blank form [was inadequate]?

Bazzley's Brief at 4.

Initially, we note the following:

- 10 -

This Court analyzes PCRA appeals in the light most favorable to the prevailing party at the PCRA level. Our review is limited to the findings of the PCRA court and the evidence of record and we do not disturb a PCRA court's ruling if it is supported by evidence of record and is free of legal error. Similarly, [w]e grant great deference to the factual findings of the PCRA court and will not disturb those findings unless they have no support in the record. However, we afford no such deference to its legal conclusions. [W]here the petitioner raises questions of law, our standard of review is de novo and our scope of review is plenary. Finally, we may affirm a PCRA court's decision on any grounds if the record supports it.

*Commonwealth v. Steckley*, 128 A.3d 826, 831 (Pa.Super. 2015)

(quotation marks and quotations omitted).

Furthermore,

In order to be eligible for PCRA relief, the petitioner must prove by a preponderance of the evidence that his conviction or sentence resulted from one or more of the enumerated circumstances found in Section 9543(a)(2), which includes the ineffective assistance of counsel. 42 Pa.C.S.[A.] § 9543(a)(2)(i).

It is well-established that counsel is presumed effective, and to rebut that presumption, the PCRA petitioner must demonstrate that counsel's performance was deficient and that such deficiency prejudiced him. To prevail on an ineffectiveness claim, the petitioner has the burden to prove that (1) the underlying substantive claim has arguable merit; (2) counsel whose effectiveness is being challenged did not have a reasonable basis for his or her actions or failure to act; and (3) the petitioner suffered prejudice as a result of counsel's deficient performance. The failure to satisfy any one of the prongs will cause the entire claim to fail.

*Commonwealth v. Benner*, 147 A.3d 915, 919–20 (Pa.Super. 2016)

(quotation marks, quotations, and citations omitted).

We need not analyze the prongs of an ineffectiveness claim in any particular order. Rather, we may discuss first any prong that an appellant cannot satisfy under the prevailing law and the

applicable facts and circumstances of the case. Finally, counsel cannot be deemed ineffective for failing to raise a meritless claim.

***Commonwealth v. Johnson***, 635 Pa. 665, 139 A.3d 1257, 1272 (2016) (citations omitted).

Bazzley's first and second issues are intertwined. Specifically, Bazzley contends the PCRA court erred in "virtually ignoring the unrebutted testimony of Dr. Rotenberg" regarding Bazzley's "mental status" at the time Bazzley rejected the Commonwealth's favorable plea offer, particularly the final plea offer which guaranteed "county jail time." Bazzley's Brief at 12, 18. In this regard, Bazzley contends Dr. Rotenberg's testimony offered at the PCRA hearing demonstrates that Bazzley was not competent to reject the plea offer.

Additionally, Bazzley argues that, while the explanation offered by Trial Counsel as to the advantages and disadvantages of the Commonwealth's plea offers "might have been adequate" for a defendant who is of "normal" intelligence and competence, it was not adequate for an incompetent defendant such as Bazzley. ***Id.*** at 18. Thus, Bazzley contends Trial Counsel was ineffective in failing to "communicate the plea offers to…Bazzley in terms that he could understand[,]" and/or in permitting Bazzley to reject the plea offer. ***Id.*** at 18, 22.

In general, a defense attorney has a duty to inform his client of a plea offer and to meaningfully discuss the offer with the client. ***Commonwealth v. Napper***, 385 A.2d 521 (Pa.Super. 1978) (*en banc*). This Court has held that, in order to prevail on a claim of ineffective assistance of counsel in failing

to consult regarding accepting or rejecting a plea offer, a petitioner must prove that counsel either failed to advise him of the offer or failed to discuss counsel's professional assessments of the risks, hazards, or prospects of proceeding to trial. *See id.*

In *Commonwealth v. Copeland*, 554 A.2d 54 (Pa.Super. 1988), the Court discussed the requirements for trial counsel in advising a client regarding potential plea agreements versus proceeding to trial as follows:

> The prevailing view among courts which have considered this issue is that counsel has a duty to inform his client of tendered plea agreements and may be found ineffective for failing to do so[.] [I]n…*Napper*, [*supra*], [this] Court determined that defense counsel had been ineffective for failing to advise his client regarding the merits of accepting a tendered plea bargain vis-a-vis the dangers of trial. In *Napper*, counsel had informed the defendant that a plea offer had been made, but counsel had failed to give his client professional advice regarding the advantages of accepting the offer and the dangers inherent in rejecting it. Finding this to constitute ineffective assistance of counsel, [this] Court reasoned:
>
>> Defense counsel has a duty, to communicate to his client, not only the terms of a plea bargain offer, but also the relative merits of the offer compared to the defendant's chances at trial.
>>
>> ***
>>
>> The decision whether to plead guilty or contest a criminal charge is probably the most important single decision in any criminal case. This decision must finally be left to the client's wishes; counsel cannot plead a man guilty, or not guilty, against his will. But counsel may and must give the client the benefit of his professional advice on this crucial decision, and often he can protect the client adequately only by using a considerable amount of persuasion to convince the client that one course or the other is in the client's best interest.

- 13 -

*Copeland*, 554 A.2d at 60 (quotations, quotation marks, and citations omitted).

In the case *sub judice*, the PCRA court found that Trial Counsel timely informed Bazzley of the prosecution's plea offers. *See* PCRA Court Opinion, filed 8/20/19, at 6, 8. The PCRA court found credible Trial Counsel's testimony that he gave Bazzley (as well as Bazzley's family) his professional advice that accepting the Commonwealth's final plea offer, in particular, would be "a good outcome" for Bazzley in that the offer was for "only six months of county incarceration whereas [Bazzley] faced the possibility of years in jail due to the several counts that carried mandatory minimum sentences [if he was found guilty at trial]." *Id.* at 8. Thus, as the PCRA court concluded, there was no merit to Bazzley's underlying claim that Trial Counsel failed to communicate the plea offers to Bazzley or that he failed to give Bazzley his professional advice regarding the advantages of accepting and the dangers inherent in rejecting the plea offers. *See Napper*, *supra*.

However, this does not end our inquiry, as Bazzley suggests that, in light of the testimony offered by Dr. Rotenberg at the PCRA hearing, which the PCRA court allegedly "virtually ignored," Trial Counsel should have realized that Bazzley was mentally incompetent to refuse the plea offer and/or should have communicated the offer to Bazzley in different terms.

Initially, as it pertains to Dr. Rotenberg's testimony, we note the PCRA court was free to accept or reject all, part, or none of Dr. Rotenberg's

testimonly and make the relevant credibility determinations based thereon. *See Commonwealth v. Abu-Jamal*, 553 Pa. 485, 720 A.2d 79 (1998). Contrary to Bazzley's assertion, the PCRA court carefully considered Dr. Rotenberg's testimony, as well as the testimony offered by Bazzley, Bazzley's family members, and Trial Counsel during the PCRA hearing. Thus, we find no merit to Bazzley's suggestion that the PCRA court "virtually ignored" Dr. Rotenberg's PCRA hearing testimony, and we are bound by the PCRA court's credibility determinations, which are supported by the record. *See id.*

Further, in rejecting Bazzley's ineffectiveness claim, the PCRA court relevantly held the following:

> [The trial] court…found [Bazzley] competent to stand trial at that time[.] [The PCRA court] likewise [finds he was] competent to make a determination as to whether to accept a plea offer or not. [The PCRA court is] further convinced of this by the fact that [Bazzley] had, at a relatively approximate [same] time and with Trial Counsel, entered into a guilty plea agreement in a sister county. The allegation of [Bazzley] now that he was then under the influence of a religious leader who assured him that a victory at trial was certain in no way [requires the conclusion] Trial Counsel[] [was ineffective]. Moreover, were [the PCRA court] to accept such a notion, [the court] would push the very boundaries of an attorney's ethical duties and include an obligation of counsel that he or she should seek to impress upon a client, involuntarily, to accept a plea offer, for fear that a defendant's decision might be unfounded or illogical.
>
> \*\*\*
>
> Moreover, at the bench trial, [the trial court] questioned [Bazzley] regarding the plea offer….Trial Counsel stated that he "conveyed to [Bazzley] that [this] is a very, very good offer from the Commonwealth," and that he "recommended [Bazzley] seriously consider [the offer]." Again, it is clear that Trial Counsel sought to urge Bazzley to accept the plea offer and the fact that [Bazzley] chose to put his faith in those who assured him of victory

is not evidence of Trial Counsel's ineffective assistance, but of [Bazzley's] religious conviction at the time, which is certainly his right to hold.

PCRA Court Opinion, filed 8/20/19, at 12.

We find no error in the PCRA court's rationale. As the PCRA found, the evidence reveals Trial Counsel adequately conveyed the Commonwealth's plea offers to Bazzley, set forth the advantages and disadvantages of accepting the plea offers, and in fact, zealously urged Bazzley to accept the Commonwealth's final plea offer in particular. The fact Bazzley decided to reject the plea offer, and now regrets his decision to do so, does not result in the conclusion that Trial Counsel was ineffective.

In his final issue, Bazzley contends his constitutional right to a jury trial was violated. Specifically, he avers he did not knowingly and voluntarily waive his right to a jury trial since the oral and written waiver colloquies were inadequate given Bazzley's alleged low IQ and mental deficiencies. *See* Bazzley's Brief at 12, 23-24. Bazzley suggests that, by failing to take into account Bazzley's "low IQ and limited capacity to understand," the trial court failed to safeguard Bazzley's constitutional right to a jury trial, and accordingly, he is entitled to relief under the PCRA. *See id.* at 24.

Initially, we note that this claim is waived since there is no indication Bazzley could not have raised it on direct appeal. In order to be eligible for relief under the PCRA, the error asserted must not have been previoulsy litigated or waived. 42 Pa.C.S.A. § 9543(a)(3). The PCRA provides that issues

are "waived if the petitioner could have raised it but failed to do so before trial, at trial, during unitary review, on appeal or in a prior state postconviction proceeding." 42 Pa.C.S.A. § 9544(b). **See Commonwealth v. Jones**, 932 A.2d 179, 182 (Pa.Super. 2007). Thus, since Bazzley has provided this Court with no reason that this issue could not have been raised on direct appeal, and yet he failed to do so, the issue is waived.[3]

In any event, had this issue not been waived, it provides Bazzley no basis for relief.

> The right to trial by jury is enshrined in both the U.S. and Pennsylvania Constitutions. **See** U.S. Const. amend. VI; Pa. Const. art. I, § 6. The importance of the right is recognized by the procedural protections in Rule 620 of th[e]…Criminal Procedural Rules, which provides that:
>
>> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.
>
> Pa.R.Crim.P. 620.
>
> \*\*\*
>
> The essential elements of a jury waiver, though important and necessary to an appreciation of the right, are nevertheless simple to state and easy to understand. "The…essential ingredients, basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the

---

[3] We note Bazzley has made no claim that any alleged mental incompetence prevented him from raising this claim earlier, in a timely manner.

- 17 -

community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." Notwithstanding the Rule's reference to a "colloquy on the record," the use of a written jury trial waiver form has been deemed sufficient in the absence of an oral jury trial waiver colloquy.

A waiver colloquy is a procedural device; it is not a constitutional end or a constitutional "right." Citizens can waive their fundamental rights in the absence of a colloquy; indeed, waivers can occur by conduct or by implication, as in the case of a criminal trial conducted *in absentia* after the defendant fails to appear.

*Commonwealth v. Mallory*, 596 Pa. 172, 941 A.2d 686, 696-97 (2008) (footnote, citations, and quotation omitted).

Furthermore, it is the defendant's burden, and not the Commonwealth's, to establish that a jury waiver is invalid. *Commonwealth v. Houck*, 596 Pa. 683, 948 A.2d 780 (2008). Also, in determining whether a jury waiver was, in fact, unknowingly or involuntarily entered, the court must look to the totality of the circumstances. *Id.* Our Supreme Court has recognized that a detailed, written waiver signed, presented, and accepted in open court should be accorded *prima facie* validity. *Mallory*, *supra*.

Here, in rejecting Bazzley's claim, the PCRA court relevantly indicated the following:

In this instance, we not only have the benefit of the executed written jury waiver colloquy, but we also have the oral colloquy on the record. When asked by the [trial] court whether he understood the potential outcome of a trial, including a mandatory ten-year sentence and possibly decades of incarceration, [Bazzley] responded that he understood. (Notes of Testimony of June 9, 2011 Status Hearing "Colloquy N.T." at 3-4). Likewise, when the court asked [Bazzley] if there was

- 18 -

anything on the written waiver colloquy that he did not understand or if he had any further questions, [Bazzley] responded that he did not. (Colloquy N.T. 4). Finally, when asked whether anyone had promised anything or whether he had been coerced or threatened in order to give up his absolute right to a jury trial, [Bazzley] responded in the negative. (Colloquy N.T. 4-5).

***

[W]e have on record a written waiver of jury trial indicating that [Bazzley] knew of the essential elements of the jury trial and that he chose to waive his right to a jury trial. As we stated above, [the trial] court then chose to hold an oral colloquy on the record to demonstrate the voluntariness of [Bazzley's] waiver and [the court was] satisfied with the exchange. [Bazzley] now seeks to shed doubt on both the written and oral colloquy through an allegation that the same colloquy used for all defendants is somehow inadequate for him. [The PCRA court] rejects[s] this argument and find[s] no merit in the claim.

PCRA Court Opinion, filed 8/20/19, at 13, 16.

We find no error in the PCRA court's sound reasoning. There is no dispute that Bazzley signed a detailed written waiver of his right to a jury trial, and the trial court conducted a lengthy and thorough oral colloquy of Bazzley regarding his waiver of a jury trial. As the PCRA court concluded, the trial judge and Bazzley communicated with each other, and Bazzley appropriately responded to the various questions, indicating his understanding of the trial judge's statements. Thus, as the PCRA court concluded, Bazzley has failed to establish that his jury waiver was invalid. *Houck*, *supra*, 948 A.2d at 788.

- 19 -

As a result, even assuming, *arguendo*, this issue was not waived, we would find Bazzley is not entitled to relief on this claim.[4]

For all of the foregoing reasons, we affirm the PCRA court's order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 05/18/2020

---

[4] Further, since the underlying issue is meritless, to the extent Bazzley suggests Trial Counsel was ineffective in failing to object to Bazzley's waiver of a jury trial, we find he is not entitled to relief. ***See Johnson***, ***supra***.