J-S02033-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| DREW A. WILSON | : | |
| | : | |
| Appellant | : | No. 45 EDA 2020 |

Appeal from the Judgment of Sentence Entered November 4, 2019
In the Court of Common Pleas of Bucks County Criminal Division at
No(s):  CP-09-CR-0005310-2018

BEFORE:  BENDER, P.J.E., KUNSELMAN, J., and NICHOLS, J.

MEMORANDUM BY NICHOLS, J.:                    **FILED MAY 12, 2021**

Appellant Drew A. Wilson appeals[1] from the judgment of sentence imposed following his convictions for three counts of possession with intent to distribute (PWID) and one count of possessing a firearm in violation of the Uniform Firearms Act (VUFA).[2]  On appeal, Appellant argues that he did not knowingly, voluntarily, and intelligently waive his right to counsel or his right to a jury trial.  He also challenges the discretionary aspects of his sentence. We affirm.

---

[1] Although Appellant captioned his appeal using the trial court's November 21, 2019 order denying his post-sentence motion, the appeal properly lies from the judgment of sentence.  **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (stating that in a criminal matter, the "appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions").  We have amended the caption accordingly.

[2] 35 P.S. § 780-113(a)(30) and 18 Pa.C.S. § 6105(a)(1), respectively.

The underlying facts of this matter are well known to the parties. ***See***

Trial Ct. Op., 12/4/20, at 10-24. Briefly, Appellant was arrested on June 19,

2018, after police recovered heroin, cocaine, marijuana, and a firearm from

Appellant following an incident at the Red Roof Inn. Appellant was charged

with three counts of PWID and one count each of VUFA and receiving stolen

property (RSP).[3]

The trial court summarized the subsequent procedural history as

follows:

> Initially, Appellant was scheduled to enter into an open guilty plea
> on January 23, 2019. Appellant indicated that he was expecting
> Mr. W. Fred Harrison, Jr., Esquire[, who represented Appellant at
> the preliminary hearing,] to represent him at the proceeding.
> [Attorney] Harrison did not enter his appearance and therefore
> Appellant appeared at the proceeding without representation.
> [Brian McBeth, Esquire] of the Public Defender's office spoke with
> Appellant and stated to the court that Appellant intend[ed] to try
> and retain [Attorney] Harrison and request a continuance or, in
> the alternative, he could contact the Public Defender's [office] to
> represent him. Appellant declined the Public Defender's
> representation earlier in the proceeding. The court then explained
> to Appellant that if he intends to go to trial instead of entering into
> the negotiated guilty plea, any charges that were previously
> withdrawn at the preliminary hearing will be reinstated. Appellant
> inquired of the court whether the Public Defender's office could file
> a motion on his behalf. The court informed Appellant that he did
> not apply to have the Public Defender's office represent him, the
> Public Defender's office could not file a motion on his behalf. The
> court gave Appellant a new trial date and informed Appellant that
> he must be ready for trial with or without an attorney. Appellant
> wanted to file a *pro se* motion to suppress all the evidence.
> Appellant also inquired whether he could proceed to trial that day
> and represent himself. The Commonwealth indicated that it was
> not prepared to proceed that day. The Commonwealth indicated

---

[3] 18 Pa.C.S. § 3925(a).

that it would provide discovery to Appellant before the next trial date. The matter was continued.

On March 5, 2019, Appellant appeared before this court. Appellant indicated that he had not received discovery and that a Public Defender had never spoke to him. Appellant stated again for the record that he would not want the Public Defender's to represent him anyway. The court arranged for discovery to be given to Appellant. Appellant renewed his intention to file a motion to suppress all the evidence and the court informed him that the motion would have to be in writing and filed with the Clerk of Courts. The court informed Appellant of the many ways he could file a motion, but stressed that hiring a lawyer to represent him would be highly beneficial. Appellant then requested to file his motion orally and to proceed to trial that day. The court informed Appellant that there was no courtroom available to proceed to trial today but he could proceed in the next couple of days. When the court told Appellant that a trial could be scheduled for the upcoming Friday, Appellant insisted that he was a tax paying citizen and this trial should not be delayed any further. Appellant also was incredulous that he was being charged with these crimes because he has his own company and it does not make sense for him to peddle drugs. Appellant was provided with discovery by the Commonwealth and a brief recess was taken. After the recess, Appellant stated that he went through all the discovery, or at least some of it, and stated again that he wanted to file a motion to suppress. Appellant further requested that the Commonwealth withdraw its prosecution. The court reminded Appellant that because he withdrew from the plea agreement, the Commonwealth could amend the charges and pursue three felony drug counts instead of the one. The court also informed Appellant of the maximum penalties on all the charges. The court continued the matter until March 25, 2019, which was the earliest date possible at Appellant's request for a speedy trial.

On March 25, 2019, the matter resumed again for trial. Appellant reiterated his refusal to have the Public Defender's office represent him. At this time, Appellant requested a continuance of ninety days because the person he thought was handling his affairs was actually a part of the conspiracy to frame him. Appellant also wanted additional time to hire a lawyer, either [Attorney] Harrison from his preliminary hearing or Mr. Mike Parlow, Esquire. Appellant stated that he had the financial ability to hire a private attorney and the reason he had not done so was due to someone stealing Appellant's money. The Commonwealth stated that it was

prepared to proceed to trial that day. The court again stated that Appellant was facing a serious sentence and also a serious state parole violation if convicted. The court strongly encouraged Appellant to hire a lawyer, either private counsel or a public defender. The court reminded Appellant that he would be held to the same standards as an attorney if he chose to represent himself. The court informed Appellant of the serious harm of not retaining a lawyer, for example: (1) the Commonwealth might try to admit evidence when there is a valid basis to omit the evidence; (2) the Commonwealth may pose a question that is prohibited by the Rules of Evidence, if the proper objection is made; and (3) Appellant may miss issues that could come up on appeal. This court stated clearly to Appellant that this matter would not be continued again and that it was imperative that Appellant obtain a lawyer. The matter was continued until June 20, 2019.

A suppression hearing began on June 20, 2019. Before the hearing began, Appellant expressed to this court that he wanted a trial and did not want the Public Defender's office to represent him. This court explained to Appellant that if he proceeded to trial, he would be held to the same standard as a lawyer. This court further explained that Appellant would have to make an opening statement and a closing statement and that he would have to cross-examine witnesses. This court also explained that the County of Bucks would provide a lawyer free of charge for Appellant. When asked if he would want a jury trial, Appellant indicated that he wanted this court to preside over his case because this court knew the law. In response to Appellant's request, this court appointed a public defender as standby counsel. This court asked Appellant numerous times if he wanted the public defender's office to represent him and Appellant adamantly refused. Ultimately Appellant stated, "I don't actually want the Public Defenders' office to represent me, I just want their assistance. I would like them to actually file a motion and use their resources to get the information to do my investigation so I can present my own case. I wanted to make the argument." [Public Defender Mr. McBeth] stood as stand-by counsel and the suppression hearing began.

Trial Ct. Op. at 1-5 (footnotes omitted, some formatting altered).

The following day, the trial court denied Appellant's suppression motion.

***See*** N.T. Trial, 6/21/19, at 32. At that time, Appellant reiterated that he

- 4 -

wished to waive his right to a jury and proceed with a bench trial. ***See id.*** At that time, the trial court conducted an on-the-record colloquy to confirm that Appellant understood his right to a jury trial. ***Id.*** at 32-33. Ultimately, after a discussion with the trial court and standby counsel, Appellant unequivocally stated that he wished to proceed without a jury. ***See id.*** at 41. Appellant also signed the back of the criminal information confirming his waiver of the right to a jury trial. ***See id.*** at 42.

Initially, Appellant proceeded with the trial *pro se.* However, after the Commonwealth rested its case-in-chief on June 25, 2019, the trial court explained:

> Appellant informed the court that he wanted to call some witnesses and he had someone in the process of helping him with a subpoena. Appellant also wanted the transcripts from the entire proceeding up until that point and the employee records of the officers who testified. Appellant also stated that a gentleman, Jermaine Magee, had been investigating on Appellant's behalf and needed a day or two to obtain the information needed to get subpoenas. Specifically, Appellant wanted Mr. Magee to find the location of the person who actually owned the narcotics and firearm found in Appellant's room and also take pictures of room 282 [at the Red Roof Inn] and the motel parking lot. This court highlighted that Appellant did not provide any names for the witnesses he wanted to call. In his request for a continuance, Appellant stated that he would like the Public Defender's assistance for his defense. A recess was taken where Appellant was given time to speak with his standby counsel.

> When this court reconvened, the discussion continued concerning Appellant's representation. Appellant continued to ask the court to allow him to engage in hybrid representation. This court gave Appellant numerous opportunities to confer with standby counsel. Standby counsel, Ms. Laura Riba, Esquire, stated for the record that Appellant did want a hybrid defense where the Public Defender's office would do the investigation, conduct the direct

examination of Appellant, and then have Appellant make his own closings. This court appointed the Public Defender's office to represent Appellant and then granted [Attorney] Riba's continuance request in order to have the notes of testimony transcribed and for the office to prepare. The trial was continued until August 18, 2019 and the proceedings concluded for the day.

Before trial resumed, Appellant, through counsel, requested that he wanted to decline the services of the Public Defender's office but wanted Ms. Caroline Criste, Esquire, to remain as stand-by counsel. After another back and forth, Appellant changed his mind again and asked for [Attorney] Criste to continue representing him. . . .

Trial Ct. Op. at 23-24. Attorney Criste thereafter represented Appellant.

On July 19, 2019, the trial court found Appellant guilty of all three counts of PWID and the single count of VUFA, but not guilty of RSP. Sentencing was deferred for the preparation of a pre-sentence investigation (PSI) report.

On November 4, 2019, the trial court sentenced Appellant to an aggregate term of ten to twenty years' incarceration.[4] Appellant filed a timely post-sentence motion for reconsideration in which he argued that his sentence was "excessive and unduly severe" in light of his "age, character, the nature of the offenses, and the lengthy period of confinement imposed." *See* Mot. for Reconsideration, 11/21/19, at 3-4 (unpaginated).

After the trial court denied Appellant's post-sentence motion, Appellant filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b)

_____

[4] Specifically, the trial court imposed sentences of five to ten years for VUFA (count one) and a consecutive term of five to ten years' incarceration for PWID—heroin (count two). The trial court declined to impose any further penalty on Appellant's remaining convictions for PWID—cocaine (count four) or PWID—marijuana (count five).

- 6 -

statement.[5]  The trial court filed a responsive Rule 1925(a) opinion addressing

Appellant's claims.

On appeal, Appellant raises the following issues:

1. Did Appellant knowingly, voluntarily, and intelligently waive his right to counsel?

2. Did Appellant knowingly, voluntarily, and intelligently waive his right to a trial by jury?

3. Did the trial court abuse its discretion by sentencing Appellant above the aggravated range of the sentencing guidelines?

Appellant's Brief at 8.

**Right to Counsel**

In his first issue, Appellant argues that the trial court erred by permitting

him to proceed *pro se*.  Appellant's Brief at 16-17.  More specifically, Appellant

claims that he did not knowingly, voluntarily, and intelligently waive his right

to counsel because the trial court failed to conduct an on-the-record colloquy

pursuant to Pa.R.Crim.P. 121.  **Id.**  He asserts that the trial court made a brief

statement that Appellant "would be held to the same standard as if he were a

lawyer" and that standby counsel would be appointed to assist him.  **Id.** at

15-16.  Appellant contends that "[t]his colloquy was insufficient to advise

Appellant of the constitutional rights that he was waiving" and, therefore, "[i]t

---

[5] Although Appellant raised additional issues in his Rule 1925(b) statement, he has abandoned those issues on appeal by failing to raise them in his brief. **See Commonwealth v. Rodgers**, 605 A.2d 1228, 1239 (Pa. Super. 1992) (stating that "[w]e must deem an issue abandoned where it has been identified on appeal but not properly developed in the appellant's brief" (citation omitted)).

cannot be said that Appellant made a knowing, voluntary, and intelligent waiver, as he was not advised of both the nature of the rights that he had and the risks and consequences of forfeiting those rights." *Id.* at 16.

Appellant also contends that the trial court "attempt[ed] to justify its failure to conduct an adequate colloquy" by concluding that Appellant forfeited his right to counsel. *Id.* However, Appellant argues that the trial court's analysis was based on "Appellant's conduct during the trial, which occurred after Appellant's purported waiver of counsel." *Id.* Appellant contends that "[o]n the date that Appellant purported to waive his right to counsel, Appellant had not acted with anything but respect for the court" and "[t]herefore, the trial court's suggestion that [he] forfeited his right to counsel by behavior that took place days after the waiver is without merit." *Id.*

The Commonwealth responds that Appellant forfeited his right to counsel through "his dilatory conduct and repeated failure to secure counsel, despite having several opportunities to do so prior to trial, and after several warnings from multiple trial judges that his failure to secure counsel would result in forfeiture of that right." Commonwealth's Brief at 10. As a result, the Commonwealth contends that "no on-the-record colloquy regarding his waiver of the right to counsel was necessary or required." *Id.* The Commonwealth emphasizes that Appellant failed to retain counsel "despite declaring, on several occasions, that he had the financial ability to hire an attorney, and after requesting at least one 90-day continuance for that express purpose." *Id.* The Commonwealth notes that Appellant refused

representation from the Public Defender's office and falsely claimed that he had been rejected for court-appointed counsel, despite the fact that he never actually applied. *Id.* Therefore, the Commonwealth concludes that "[s]uch behavior must result in forfeiture of the right to counsel, and the trial court correctly found that the totality of Appellant's statements and actions demonstrate a deliberate attempt to delay the court process and hamper his prosecution through dilatory conduct." *Id.* at 19-20.

The Sixth Amendment to the United States Constitution and Article I, Section 9 of the Pennsylvania Constitution guarantee the right to counsel. *Commonwealth v. Lucarelli*, 971 A.2d 1173, 1178 (Pa. 2009). Whether that right was violated is a question of law, over which our standard of review is *de novo* and our scope of review is plenary. *See id; see also Commonwealth v. Baldwin*, 58 A.3d 754, 762 (Pa. 2012).

A defendant can waive or forfeit his right to counsel. *Lucarelli*, 971 A.2d at 1178-79. In distinguishing between waiver and forfeiture, our Supreme Court has stated that while waiver is "an intentional and voluntary relinquishment of a known right," forfeiture "does not require that the defendant intend to relinquish a right, but rather may be the result of the defendant's 'extremely serious misconduct' or 'extremely dilatory conduct.'" *Id.* at 1179. Therefore, when a defendant forfeits his right to counsel through his own conduct, the waiver-of-counsel colloquy requirements set forth at Pa.R.Crim.P. 121 do not apply. *See id.* (explaining that "[t]o hold otherwise would permit a recalcitrant defendant to engage in the sort of obstructive

behavior that mandates the adoption of the distinction between forfeiture and waiver in the first instance").

In **Lucarelli**, this Court concluded that the defendant did not waive or forfeit his right to counsel. **Id.** at 1178. Therefore, this Court granted a new trial, finding that the trial court erred by permitting the defendant to proceed to trial *pro se* without conducting a proper colloquy. **Id.** On appeal, our Supreme Court reversed. **Id.** at 1175. In rejecting this Court's conclusion, the **Lucarelli** Court noted that the defendant had the financial ability to retain private counsel, fired several lawyers that he had hired, was given over eight months to prepare for trial, and then appeared at trial without an attorney or an explanation as to why counsel was not present. **Id.** at 1179. Therefore, the **Lucarelli** Court held that "where a defendant's course of conduct demonstrates his [] intention not to seek representation by private counsel, despite having the opportunity and financial wherewithal to do so, a determination that the defendant be required to proceed *pro se* is mandated because that defendant has forfeited the right to counsel." **Id.** at 1179.

Here, in its Rule 1925(a) opinion, the trial court found that Appellant forfeited his right to counsel by engaging in dilatory conduct, which included his repeated failure to retain private counsel and his refusal to allow the Public Defender's office to represent him. **See** Trial Ct. Op. at 30.

Specifically, the trial court explained:

Appellant appeared before the court three times without properly obtaining counsel. Each time Appellant appeared, the court instructed him to hire counsel or retain the Public Defender's

office. After the third and final continuance request, this court warned that this matter would not be continued again and that it was imperative that Appellant obtained a lawyer. Appellant also requested a continuance of 90 days and gave the excuse that the person he thought was handling affairs was actually a part of the conspiracy to frame him. Appellant also wanted additional time to hire either [Attorney] Harrison or [Attorney] Parlow. Appellant stated that he had the financial ability to hire a private attorney and the reason he had not done so was due to someone stealing Appellant's money.

When Appellant appeared on June 20, 2019, he no longer sought to hire private counsel and instead made the decision that he wanted to proceed *pro se*. Appellant was given numerous continuances and opportunities to hire counsel. Finally, on [June] 25, 2019, this court appointed the Public Defender's office to represent Appellant and, then granted the public defender's continuance request in order to have the notes of testimony transcribed from the previous days of trial and for the office to prepare. The trial was continued until August 18, 2019. When trial recommenced on August 18, 2019, it is this court's opinion that Ms. Criste of the Public Defender's office competently represented Appellant and gave him the best defense that was possible in his case.

Trial Ct. Op. at 46-47.

Further, the trial court stated:

Appellant was given numerous occasions to hire private counsel. He was given numerous opportunities to speak with the Public Defender's office. Appellant even failed to apply for representation by a public defender. . . . On the date of the first continuance, when private counsel did not appear, Appellant stated that he was "baffled about all of this" because the attorney had been paid in full. Although Appellant insisted that he had the funds to hire private counsel, he never did. Appellant was often prepared to proceed to trial, but only when the Commonwealth was not prepared or when a courtroom was not available. Appellant insisted that he had a right to a speedy trial, but only when there was a delay not of his creation.

*Id.* at 32-33.

Based on our review of the record, we agree with the trial court that Appellant forfeited his right to counsel.  **See Lucarelli**, 971 A.2d at 1178.  As noted by the trial court, Appellant's trial was continued multiple times for Appellant to retain counsel.  **See** Trial Ct. Op. at 26-29.  However, despite the trial court's warnings that Appellant needed to retain counsel, Appellant failed to do so.  **See id.**  Appellant also refused to allow representation by the Public Defender's office, at one point stating that he had been "rejected," although he never actually completed the application.  **See** Trial Ct. Op. at 30.

Under these circumstances, we conclude that Appellant's pattern of behavior constituted dilatory conduct which resulted in forfeiture of his right to counsel.  **See Lucarelli**, 971 A.2d at 1179 (stating that "while defendants are entitled to choose their own counsel, they should not be permitted to unreasonably clog the machinery of justice or hamper and delay the state's efforts to effectively administer justice").  Therefore, the trial court acted properly in allowing Appellant to proceed to trial *pro se.*  **See id.**  Further, because Appellant forfeited his right to counsel, the trial court was not required to conduct an on-the-record waiver colloquy pursuant to Rule 121(A). **See id.**  Accordingly, Appellant is not entitled to relief.

**Waiver of Right to Jury Trial**

Appellant next challenges the validity of his jury trial waiver.  Appellant's Brief at 18.  He claims that he did not have "a clear understanding of rights and the rights he was giving up by waiving his right to a trial by jury."  **Id.** at 19.  Instead, Appellant asserts that "the record is replete with exchanges

between Appellant and the trial court which makes clear that Appellant lacked a basic understanding of what he was doing." *Id.* Further, Appellant claims that the record demonstrates that he "had a complete lack of understanding of the essential ingredients of a jury trial" and "[t]he confused colloquy does not clearly inform him of his rights to a jury trial." *Id.* at 21. Finally, Appellant argues that "he was given inconsistent and legally incorrect information regarding the burden of proof" and, therefore, his jury trial waiver was "not knowingly and intelligently made." *Id.*

The Commonwealth responds that "it is clear from Appellant's responses to the trial court's thorough explanation of the necessary ingredients of a jury trial, and his signature on the written waiver form acknowledging same, that he knowingly, voluntarily, and intelligently waived his right to a jury trial." Commonwealth's Brief at 25. Further, the Commonwealth asserts that although "Appellant expressed concern regarding whether the court would credit his testimony and evidence, and expressed some confusion regarding his burden of proof at trial[, n]either of those concerns implicates the essential ingredients of a jury trial or his knowing, voluntary, and intelligent waiver of same." *Id.* at 24. In any event, the Commonwealth notes that the trial court reiterated that Appellant "had no burden of proof and that the court would be fair in its consideration of all testimony presented" and Appellant confirmed that he understood. *Id.* at 24-25. Therefore, the Commonwealth concludes that Appellant's claim is meritless. *Id.* at 25.

In reviewing Appellant's claim, we are guided by the following principles:

The right to trial by jury is enshrined in both the U.S. and Pennsylvania Constitutions. ***See*** U.S. Const. amend. VI; Pa. Const. art. I, § 6. The importance of the right is recognized by the procedural protections [set forth] in Rule 620 [of the Pennsylvania Rules of Criminal Procedure], which provides that:

> In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

***Commonwealth v. Mallory***, 941 A.2d 686, 696 (Pa. 2008) (quoting Pa.R.Crim.P. 620).

Our Supreme Court has explained that

> [t]o be valid, it is well settled that a jury waiver must be knowing and voluntary, and the accused must be aware of the essential ingredients inherent to a jury trial. . . . [T]he three ingredients are: 1) that the jury be chosen from members of the community (*i.e.*, a jury of one's peers), 2) that the accused be allowed to participate in the selection of the jury panel, and 3) that the verdict be unanimous.

***Commonwealth v. Houck***, 948 A.2d 780, 787 (Pa. 2008) (citations omitted).

Further, "it is the defendant's burden, and not the Commonwealth's, to establish that a jury waiver is invalid." ***Id.*** at 788 (citations omitted).

Here, the trial court conducted an on-the-record colloquy during which it explained the following rights to Appellant:

> You have a right to a trial by jury. You, with Mr. McBeth's assistance, could participate in selecting [twelve] people from the community who would serve as jurors in this case.

- 14 -

Before you could be found guilty, all 12 would have to agree. In other words, the verdict would have to be unanimous.

With or without a jury the burden of proof upon [the Commonwealth] is the same. With or without a jury he has to prove your guilt beyond a reasonable doubt. You wouldn't have to prove anything. You wouldn't have to present evidence. You would not have to testify.

N.T. Trial, 6/21/19, at 32-33. Then, after a discussion with the trial court, Appellant unequivocally stated that he wished to proceed without a jury. *See*

*id.* at 41. Appellant also signed the back of the criminal information confirming his waiver of the right to a jury trial. *See id.* at 42.

In its 1925(a) opinion, the trial court addressed Appellant's claim as follows:

[At the suppression hearing, w]hen asked if he would want a jury trial, Appellant indicated that he wanted this [c]ourt to preside over his case because this [c]ourt knew the law. Before the non-jury trial began, this [c]ourt advised Appellant of his right to a trial by jury and Appellant intelligently responded and ultimately signed the information indicating that he is requesting a bench trial. It is apparent from Appellant's actions that he knowingly, voluntarily, and intelligently waived, his right to a jury and elected to have this [c]ourt decide the case because it understood the law better than a jury.

Trial Ct. Op. at 34.

Based on our review of the record, we agree with the trial court that Appellant's jury waiver was knowing, voluntary, and intelligent. *See Houck*, 948 A.2d at 787. As discussed previously, the trial court conducted an on-the-record colloquy during which the court reviewed with Appellant the three essential ingredients of a jury trial. *See* N.T. Trial, 6/21/19, at 32-33. After

- 15 -

Appellant stated that he understood those rights and indicated that he wished to proceed without a jury, he confirmed his waiver by executing the written waiver form located on the back of his criminal information. ***See id.*** at 42. Under these circumstances, we conclude that Appellant's jury waiver was sufficient. ***See Houck***, 948 A.2d at 787.

Moreover, to the extent Appellant claims that the trial court "misstated" the burden of proof, that assertion is unsupported by the record. ***See*** N.T. Trial, 6/21/19, at 32-33. The trial court repeatedly stated that the Commonwealth bore the burden of proof and that Appellant was not required to present evidence or testify, regardless of whether he proceeded with a bench trial or a jury trial. ***See id.*** at 34-41. Therefore, Appellant is not entitled to relief on this basis.

## Discretionary Aspects of Sentence

In his remaining issue, Appellant claims that the trial court's sentence was excessive. Appellant's Brief at 10. Specifically, Appellant contends that his sentence for PWID—heroin was "well beyond the aggravated range of the sentencing guidelines" and the trial court "failed to adequately specify sufficient aggravating factors that might support such an upward departure." ***Id.*** at 22-23. Appellant also asserts that the trial court "improperly focused on the nature of the crime when fashioning [his] sentence" without considering the sentencing guidelines or Appellant's "character, history, or condition." ***Id.*** at 26-27. Therefore, Appellant requests that we vacate the judgment of sentence and remand the matter for resentencing. ***Id.***

- 16 -

The Commonwealth responds that Appellant failed to raise a substantial question and that, "[a]t most, Appellant merely complains that the court failed to adequately consider or give appropriate weight to his mitigating evidence, and baldly avers that his sentence is unreasonable and excessive." Commonwealth's Brief at 27. The Commonwealth asserts that "[w]hile Appellant may disagree with the imposed sentence, he failed to advance a colorable argument that the court's sentence deviated from the Sentencing Code or the fundamental norms of sentencing." *Id.* at 31.

In any event, the Commonwealth asserts that the trial court clearly articulated its reasons for imposing a sentence outside the guidelines, which included a discussion of Appellant's mitigating circumstances and the sentencing guidelines. *Id.* at 34-35. The Commonwealth argues that Appellant's five-to-ten-year sentence for one count of PWID is not excessive "in light of [his] conduct and criminal history." *Id.* Further, the Commonwealth emphasizes that the trial court "only imposed sentence on one of the three counts of [PWID] and imposed the recommended guideline range sentence for [VUFA]" and, as a result, "the aggregate sentence imposed is slightly less than the sentence Appellant would have received if the court imposed consecutive standard range sentences for all three counts of [PWID] and [VUFA]." *Id.* at 35-36. Therefore, the Commonwealth concludes that Appellant is not entitled to relief.

"[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." ***Commonwealth v. Derry***, 150 A.3d 987,

991 (Pa. Super. 2016) (citation omitted). Rather, before reaching the merits of such claims, we must determine:

> (1) whether the appeal is timely; (2) whether [the a]ppellant preserved his issues; (3) whether [the a]ppellant's brief includes a [Pa.R.A.P. 2119(f)] concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is inappropriate under the [S]entencing [C]ode.

**Commonwealth v. Corley**, 31 A.3d 293, 296 (Pa. Super. 2011) (citation omitted).

"The determination of what constitutes a substantial question must be evaluated on a case-by-case basis." **Commonwealth v. Battles**, 169 A.3d 1086, 1090 (Pa. Super. 2017) (citation omitted). "A substantial question exists only when the appellant advances a colorable argument that the sentencing judge's actions were either: (1) inconsistent with a specific provision of the Sentencing Code; or (2) contrary to the fundamental norms which underlie the sentencing process." **Commonwealth v. Grays**, 167 A.3d 793, 816 (Pa. Super. 2017) (citation omitted).

"To preserve an attack on the discretionary aspects of sentence, an appellant must raise his issues at sentencing or in a post-sentence motion. Issues not presented to the sentencing court are waived and cannot be raised for the first time on appeal." **Commonwealth v. Malovich**, 903 A.2d 1247, 1251 (Pa. Super. 2006) (citations omitted).

Here, Appellant filed a timely notice of appeal, preserved his sentencing claim in a post-sentence motion, and included a Rule 2119(f) statement in his brief. **See Corley**, 31 A.3d at 296; **see also Malovich**, 903 A.2d at 1251. Further, Appellant's claims raise a substantial question for our review. **See Commonwealth v. Sheller**, 961 A.2d 187, 190 (Pa. Super. 2008) (stating that a claim that "the sentencing court exceeded the recommended range in the Sentencing Guidelines without an adequate basis raises a substantial question for this Court to review"); **see also Commonwealth v. Caldwell**, 117 A.3d 763, 770 (Pa. Super. 2015) (*en banc*) (holding that "an excessive sentence claim—in conjunction with an assertion that the court failed to consider mitigating factors—raises a substantial question" (citations and quotation marks omitted)).

Our well-settled standard of review is as follows:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

**Commonwealth v. Raven**, 97 A.3d 1244, 1253 (Pa. Super. 2014) (citation omitted).

When imposing sentence, the trial court must follow the general principle that sentence should be consistent with "the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim

- 19 -

and on the community, and the rehabilitative needs of the defendant." 42 Pa.C.S. § 9721(b). Further, "the trial court is required to consider the particular circumstances of the offense and the character of the defendant[,]" including the defendant's "prior criminal record, age, personal characteristics, and potential for rehabilitation." **Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa. Super. 2009) (citations omitted).

In every case where a sentencing court imposes a sentence outside of the sentencing guidelines, the court must provide in open court a contemporaneous statement of reasons in support of its sentence. 42 Pa.C.S. § 9721(b). This Court has explained:

[Section 9721] requires a trial judge who intends to sentence a defendant outside of the guidelines to demonstrate on the record, as a proper starting point, [its] awareness of the sentencing guidelines. Having done so, the sentencing court may deviate from the guidelines, if necessary, to fashion a sentence which takes into account the protection of the public, the rehabilitative needs of the defendant, and the gravity of the particular offense as it relates to the impact on the life of the victim and the community, so long as [it] also states of record the factual basis and specific reasons which compelled [it] to deviate from the guideline range.

When evaluating a challenge to the discretionary aspects of sentence . . . it is important to remember that the sentencing guidelines are advisory in nature. If the sentencing court deems it appropriate to sentence outside of the guidelines, it may do so as long as it offers reasons for this determination. [O]ur Supreme Court has indicated that if the sentencing court proffers reasons indicating that its decision to depart from the guidelines is not unreasonable, we must affirm a sentence that falls outside those guidelines.

A sentencing court, therefore, in carrying out its duty to impose an individualized sentence, may depart from the guidelines when

- 20 -

it properly identifies a particular factual basis and specific reasons which compelled [it] to deviate from the guideline range.

***Commonwealth v. Shull***, 148 A.3d 820, 836 (Pa. Super. 2016) (citations omitted and formatting altered).

Generally, "[i]t is impermissible for a court to consider factors already included within the sentencing guidelines as the **sole** reason for increasing or decreasing a sentence to the aggravated or mitigated range." ***Commonwealth v. Shugars***, 895 A.2d 1270, 1275 (Pa. Super. 2006) (citation and quotation marks omitted) (emphasis in original). However, "[t]rial courts are permitted to use . . . factors already included in the guidelines **if, they are used to supplement other extraneous sentencing information**." ***Id.*** (citation and quotation marks omitted) (emphasis in original).

However, this Court will not reweigh the proper sentencing factors considered by the trial court and substitute our own judgment in the place of the trial court. ***Commonwealth v. Macias***, 968 A.2d 773, 778 (Pa. Super. 2009). Further, where a PSI exists, "we shall . . . presume that the sentencing judge was aware of relevant information regarding the defendant's character and weighed those considerations along with mitigating statutory factors." ***Commonwealth v. Conte***, 198 A.3d 1169, 1177 (Pa. Super. 2018) (citation omitted), *appeal denied*, 206 A.3d 1029 (Pa. 2019).

Here, as noted previously, the trial court sentenced Appellant to consecutive terms of five to ten years' incarceration for both VUFA and PWID—

heroin,[6] resulting in an aggregate sentence of ten to twenty years' incarceration. At the start of the sentencing hearing, the trial court stated that it had reviewed Appellant's PSI report. *See* N.T. Sentencing Hr'g, 11/4/19, at 20.

Before imposing Appellant's sentence, the trial court explained:

[Appellant], you should understand that there are several things that I have got to take into consideration when imposing sentence. That's why I asked for the [PSI report,] so I could have as much information as possible about your background.

Your nature and character and background are things I must take into account, the facts of the case, the sentencing guidelines and, of course, the need to protect the community and your need for rehabilitation and any impact this has had upon any victim or community as well.

So all these things have been considered and I'm going to break them down for you so you can have a complete understanding of what I'm about to impose on the sentence.

First of all, your background I read the [PSI] report and I understand that you're a father, grandfather, you've had a son. We heard about that.

You also have an extensive criminal record. I might point out at all times he's been respectful, polite. He's been articulate and intelligent in the way he's conducted himself. In fact, he's one of the more pleasant defendants I have had in the courtroom. Doesn't excuse some of the things that he is trying to convince me are true, but I will [talk] about that in a few minutes.

---

[6] Appellant's VUFA sentence was within the standard guideline range. Appellant's sentence for PWID—heroin exceeded the guideline minimum range of 24-30 months' incarceration, plus or minus twelve months for aggravating or mitigating factors. However, the trial court did not impose any further penalty on Appellant's remaining PWID convictions for cocaine and marijuana, which called for minimum guideline sentences of 21-27 months' and 12-18 months' incarceration, respectively.

So he's been very respectful and I think that's admirable, but you have a criminal record that includes an aggravated assault with a firearm without a license where you shot someone.

You have, by my count, two prior felonies, possession with intent to deliver, another firearm offense if I read the [PSI report] correctly. Then you have the fleeing and eluding and whatever – flight to avoid apprehension in another matter, so you have an extensive criminal record. What troubles me most of all is the consistency of the charges.

What I mean by that is, you have a prior record that has drug offenses and guns. And here, in this case, the facts of the case are quit[e] simple. You're found in possession of a firearm that was stolen; although I [] found you not guilty of the knowing that it was stolen or receiving stolen property, but nevertheless, it was stolen and you had possession of it.

You[] had drugs, baggies, cutting agents, digital scales, cash, 500 plus grams of marijuana, [3.3+] grams of heroin and fentanyl and [almost 4.3] grams of cocaine. The handgun had live ammunition, and you wanted me to believe that the police planted this evidence. Obviously, had I believed that, I would have found you not guilty.

Clearly, I didn't believe that, so I've taken into consideration the facts, the criminal history and the fact that you're on parole for, I believe, a similar offense. . . .

And then, of course, the sentencing guidelines, as a consequence of your criminal history, recommended a sentence on the possession with intent to deliver heroin of 18 months in the mitigated range, 24 to 30 in the standard range and 36 in the aggravated range.

Possession with intent to deliver cocaine, 15 months in the mitigated range, 21 to 27 in the standard[,] and 33 in the aggravated range.

And the possession with intent to deliver marijuana is 9 months in the mitigated range, 12 to 18 in the standard range and 21 in the aggravated range. And, of course, the firearms offense recommended sentence of 48 months in the mitigated, 60 months in the standard, which would be a maximum sentence.

The impact that this has had on the community is obvious. You're introducing not one, not two, but three different drugs into the community, two of which, I think we can agree, are highly addictive—heroin and fentanyl, we all know if you read the paper you come into court, it is dangerous. There's no other way to put it.

They're addictive, they're putting people at risk and you're reintroducing that and spreading that throughout the community. And, of course, the firearm. Here you are again with a firearm after having been convicted of a firearm previously, so you knew you should not have it, yet you have it.

I guess I suggest to you that I almost understand that it is part of the trade. In many cases – drugs and guns go together. You may be laughing at that,[7] but your history suggests otherwise. So, of course, there's a need to protect the community because you've been placed in the state supervision. You've been put in the state correctional facility and when you get out you commit crimes and while you're on parole you commit crimes, so [my] need to protect the community that [the Commonwealth] has argued, is a real one. And, of course most importantly is the need for your rehabilitation.

So I think that to [not] impose a sentence of total incarceration would depreciate the seriousness of the offense and therefore I think on this case a sentence of total incarceration is appropriate.

*Id.* at 20-25.

In its Rule 1925(a) opinion, the trial court reiterated the reasons for imposing Appellant's sentence and stated that it considered the PSI report, along with factors such as "the protection of the public, the gravity of the offense as it relates to the impact on the community, and the rehabilitative needs of [Appellant]." *See* Trial Ct. Op. at 45.

---

[7] The transcript showed that Appellant laughed in response to the trial court's statement that drugs and guns "go together." *See* N.T. Sentencing Hr'g at 25 (reflecting Appellant's response as follows: "([Appellant] laughing)").

Based on our review of the record, we discern no abuse of discretion by the trial court. *See Raven*, 97 A.3d at 1253. Because the trial court reviewed a PSI report, we presume that the trial court was aware of Appellant's character and weighed those considerations along with other mitigating factors. *See Conte*, 198 A.3d at 1177. Further, the record demonstrates that the trial court stated the sentencing guidelines applicable to each offense, considered the Section 9721(b) factors, and provided a statement of the reasons it relied on when imposing a sentence for PWID—heroin that exceeded the guideline ranges. *See Shull*, 148 A.3d at 836. Although the trial court discussed Appellant's criminal background and the nature of the offense, the trial court did not solely rely on those factors when fashioning Appellant's sentence. *See Shugars*, 895 A.2d at 1275. Finally, to the extent the trial court emphasized the seriousness of the offense and the effect of Appellant's drug crimes on the community, we will not re-weigh those factors on appeal. *See Macias*, 968 A.2d at 778. Therefore, because the trial court considered the appropriate sentencing factors and set forth the reasons for deviating from the sentencing guidelines, Appellant is not entitled to relief. *See Shull*, 148 A.3d at 836.

Judgment of sentence affirmed.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

*Date: 5/12/2021*