J-S44008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                                        : PENNSYLVANIA
                                                        :

               v. :

ELIJAH THOMPSON :
                                                        :
           Appellant : No. 2226 EDA 2023

Appeal from the Judgment of Sentence Entered July 24, 2023
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002060-2020

BEFORE: NICHOLS, J., MURRAY, J., and LANE, J.

MEMORANDUM BY NICHOLS, J.: **FILED MARCH 18, 2025**

Appellant Elijah Thompson appeals from the judgment of sentence imposed following his convictions for aggravated assault, simple assault, and resisting arrest[1] following a bench trial.[2] On appeal, Appellant argues that the trial court failed to resolve whether Appellant was competent to stand trial, claims his waiver of a jury trial was invalid, and challenges the discretionary aspects of his sentence. After careful review, we affirm Appellant's convictions, affirm the judgments of sentence for aggravated assault and resisting arrest, and we vacate the judgment of sentence for simple assault.

_____

[1] 18 Pa.C.S. §§ 2702(a)(3), 2701(a)(1), and 5104, respectively.

[2] We note that there are appeals at two additional related trial court dockets: 2059-2022 and 4189-2019. The appeals at 2059-2020 and 4189-2019 will be resolved in separate dispositions.

By way of background, Appellant was charged with the aforementioned offenses after he struck and kicked Officer Nicole Navarra and Lieutenant Maureen Doyle. Officer Navarra testified that on July 9, 2020, she transported Appellant in her car to the police station located at 171 North Ship Road in Exton, PA. *See* N.T. Trial, 3/7/23, at 19-20. Appellant initially refused to get out of the car, but eventually complied, and Officer Navarra and Officer David J. Coppola took Appellant to a cell to await fingerprinting and a photograph. *See id.* at 21-23. While Appellant was in the cell, he was yelling and Officer Navarra testified that she was trying to get him to calm down. *See id.* at 24. Due to Appellant's behaviors, the officer decided to abandon attempting to process Appellant at that time. *See id.* at 27. At this point, Officer Navarra testified that Lieutenant Doyle[3] wanted to remove Appellant from the cell and transport him to the Chester County Prison. *See id.* at 27-28. When the officers entered the cell, Appellant was uncooperative, and he began to physically resist when the officers attempted to put handcuffs on him. *See id.* at 29. As Appellant kept resisting, Lieutenant Doyle instructed Officer Navarra to use her stun gun on Appellant, and Officer Navarra stunned Appellant in the torso. *See id.* at 31. Officer Navarra testified that Appellant winced and gritted his teeth, and he then kicked her in the abdomen, and she dropped to her knees. *See id.* at 32. Officer Navarra got back up and stunned

---

[3] Officer Navarra testified that Lieutenant Doyle's last name is now Evans. *See* N.T. Trial, 3/7/23, at 27. We will use the name Lieutenant Doyle for consistency.

Appellant a second time, and Appellant kicked Officer Navarra's leg. *See id.* at 33. After Officer Navarra stunned him the second time, the officers were then able to place Appellant in handcuffs and Appellant then lunged at Lieutenant Doyle. *See id.* at 33-34. The officers then placed Appellant in shackles and moved him to the backseat of a police car. *See id.* The entire episode lasted about three minutes. *See id.* at 35. As a result of this incident, Appellant was charged with the aggravated assault and simple assault of both officers. *See* Crim. Information, 8/5/20; N.T. Sentencing, 7/24/23, at 5; Trial Ct. Op., 5/29/24, at 2.

At his bench trial of March 7, 2023, the trial court found Appellant not guilty of all assault charges as to Lieutenant Doyle and convicted Appellant of both the aggravated and simple assault as to Officer Navarra. *See* N.T. Trial, 3/7/23, at 117. Appellant was also found guilty of resisting arrest. *See id.* On July 24, 2023, the trial court sentenced Appellant to a term of incarceration for six months to five years for aggravated assault and a concurrent term of six months to one year for resisting arrest. The trial court imposed no further penalty for simple assault, resulting in an aggregate sentence of six months to five years of incarceration. *See* Sentencing Order, 7/24/23; N.T. Sentencing, 7/24/23, at 50.

Appellant filed post-sentence motions, which the trial court denied on August 16, 2023. This timely appeal followed. Both the trial court and Appellant complied with Pa.R.A.P. 1925.

On appeal, Appellant raises the following issues, which we have reordered as follows:

1. Whether remand is required to determine if Appellant was in fact competent to stand trial, due to the trial court's failure to resolve the issue of competency prior to the bench trial?

2. Whether Appellant's waiver of his right to a jury trial was invalid due to the issues surrounding his competency?

3. Whether the lower court's sentence was excessive and failed to consider mitigating factors?

Appellant's Brief at 6 (formatting altered).

### Competency

Appellant first argues that the trial court failed to resolve whether he was competent to stand trial.[4]  *See id.* at 16.  Appellant contends that although the trial court ordered a competency hearing, no hearing was held and remand is required.  *See id.* at 17.

_____

[4] Appellant concedes that he did not challenge the trial court's conclusion that he was competent to stand trial at the time of trial.  *See* Appellant's Brief at 15.  However, Appellant argues that the determination of competency to stand trial is an exception to the rule that issues not raised in the trial court are waived on appeal.  *See id.* (citing *Commonwealth v. Santiago*, 855 A.2d 682, 691-92 (Pa. 2004); *Commonwealth v. Marshall*, 318 A.2d 724 (Pa. 1974)).  We agree with Appellant's argument that the issue of his competency is not waived.  *See Marshall*, 318 A.2d at 727 (stating "[i]t is contradictory to argue that a defendant may be incompetent, and yet knowingly and intelligently 'waive' his right to have the court determine his capacity to stand trial" (quoting *Pate v. Robinson*, 383 U.S. 375, 384 (1966))).  Further, we note that Appellant included in his Rule 1925(b) statement the assertion that he was not competent to stand trial.  *See* Rule 1925(b) Statement, 4/1/24, at 1.  Accordingly, we will address the trial court's finding that Appellant was competent to stand trial.

The Commonwealth responds that after the trial court ordered a competency evaluation on May 16, 2022, the evaluation was conducted, and Appellant was determined to be competent to stand trial. *See* Commonwealth's Brief at 24. The Commonwealth asserts that "[b]ecause [Appellant] underwent a competency examination, without objection from his attorney, and was found competent to stand trial, there was no need for a competency hearing." *Id.* at 19 (citing **Commonwealth v. D. Smith**, 501 A.2d 656, 663 (Pa. Super. 1985) (stating that "[w]here there is no objection by counsel to an incompetency examination, a hearing is not a precondition to such an examination. In fact, in the instant case, [the appellant was examined] by order of the court and ultimately found competent to stand trial. Requesting a competency hearing under such circumstances would have been an exercise in futility, and counsel was not ineffective for failing to make such a request")). Further, the Commonwealth notes that Appellant's counsel agreed on the record that Appellant was competent to stand trial, and ultimately, the trial court concluded that Appellant was competent for trial. *See id.* at 24.

We review the trial court's competency determination bearing in mind the following factors:

> A defendant is presumed to be competent to stand trial. The burden, therefore, is on [the a]ppellant to prove, by a preponderance of the evidence, that he was incompetent to stand trial. To prove that he was incompetent, [the a]ppellant must establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense.

To obtain a hearing on this claim, [the a]ppellant would have to proffer evidence sufficient to meet this burden.

*Commonwealth v. J. Smith*, 17 A.3d 873, 899-900 (Pa. 2011) (citations omitted and formatting altered); *see also Commonwealth v Blakeney*, 108 A.3d 739, 752 (Pa. 2014). An appellate court extends "great deference to the trial judge's determination as to competency because [the trial court] had the opportunity to observe directly a defendant's behavior." *Commonwealth v. Flor*, 998 A.2d 606, 617 (Pa. 2010) (citation omitted).

The trial court addressed this issue as follows:

In the matter *sub judice*, [Appellant's] trial counsel had a concern about [Appellant's] competence to stand trial. On January 12, 2022, counsel filed a petition to determine competency. On April 5, 2022, we issued an order scheduling a hearing on May 16, 2022 to determine whether a competency evaluation should be ordered. On May 16, 2022, after conducting said hearing,[5] we issued an order directing [Appellant] to submit to a competency evaluation by MHM Services, Inc. or its successor provider to be held at Chester County Prison. Psychiatrist Carla Rodgers, M.D. of the Pennsylvania Department of Human Services Office of Mental Health and Substance Abuse Services evaluated [Appellant] on June 28, 2022. She completed her Report on July 5, 2022.

In her Report, Dr. Rodgers stated[:]

Based on the presentation and history I was able to obtain, I diagnose [Appellant] with schizoaffective disorder, which means that he has psychotic symptoms or being out of touch with reality, as well as mood symptoms. He is presently under control with medication. He also carries a diagnosis of borderline personality disorder, but I saw nothing in the records or my evaluation to support this diagnosis, [Appellant's] anger and paranoia were fueled by

_____

[5] The notes of testimony from this hearing were not included in the certified record.

- 6 -

his non-compliance with medication and his methamphetamine drug use. I would secondarily diagnose him with methamphetamine use disorder.

(Competency Evaluation, 7/5/22, at 6).[6] Dr. Rodgers made the following conclusions about [Appellant's] competency:

The following are my conclusions regarding [Appellant], to a reasonable degree of medical certainty, based upon the above history and findings.

1. It is my judgment that [Appellant] does have [the] ability to understand the proceedings against him at the time of this evaluation.

2. It is my judgment that [Appellant] does have the ability to assist in the preparation of his defense regarding the criminal action against him at the time of this evaluation.

Based upon the 2 conclusions it is my judgment that [Appellant] presently is medically competent to stand trial at this time.

(Competency Evaluation, 7/5/22, at 6). Thus, [Appellant's] psychiatric evaluation supported the conclusion that [Appellant] was competent. No objection was made to the evaluation nor was another evaluation requested by either party.

[Appellant's] non-jury trial was held on March 7, 2023. While preparing for trial it was discovered that an order regarding [Appellant's] competency had, inadvertently, not been issued. Consequently, we addressed the issue of [Appellant's] competence at the beginning of his non-jury trial.

THE COURT: Actually, before I get into even the colloquy. There, at one point, there were four cases. They have been on my docket for a very long time—

_____

[6] In his brief, Appellant notes that the evaluation was not made part of the record. *See* Appellant's Brief at 16. However, Appellant does not claim that the evaluation does not exist, and we note that prior counsel acknowledged on the record that the evaluation was conducted. *See* N.T. Trial, 3/7/23, at 6-7.

[APPELLANT]: Yes.

THE COURT: --As you know. And at every turn, I have always allowed time for evaluations. There were different mental health evaluations that were completed in this case.

We never did a follow-up order with regard to capacity of competency and so forth. So I think that we should address this on the record now before we move into the trial.

[Appellant] entered pleas on two cases last term. I saw no evidence of any problem. I believe he fully understood everything at that time and was able to participate in his defense. But I do want to give the opportunity for the defense to speak to this.

I know the evaluations were completed but my clerk picked up on there was never an order at any point in time. So let's just address it on the record.

MR. GALLOWAY: So, Your Honor, I believe the competency evaluation was completed last July, I believe July the 5th if I'm not mistaken; and although [Appellant] suffers from various mental health issues, it was deemed that he was competent to proceed.

Since that date, I have met with [Appellant] on several occasions and I am satisfied and confident that he understands the nature of the charges that have been filed against him. He has certainly been able to participate in reference to a defense in this matter.

I have seen no indication as to the competence issue that he's not competent to proceed. And therefore, I would agree to an order being entered today that he's competent to proceed.

THE COURT: [Appellant], you're feeling well today?

[APPELLANT]: Yeah. Yes.

THE COURT: Commonwealth, do you have anything to add for the record?

MS. EGUNSOLA: Nothing else to add, Your Honor.

THE COURT: I just, I think there's no doubt from the record that all due diligence was pursued by counsel and by prior

counsel with regard to all four cases. Would you, please, state your name for me for the record.

[APPELLANT]: Elijah Thompson.

(Bench Trial Transcript, 3/7/23, N.T. 6-8). We then conducted a verbal colloquy with [Appellant] concerning his decision to waive his right to a jury trial. [Appellant's] answers to that colloquy support the conclusion that [Appellant] was competent to proceed to trial.

THE COURT: And [Appellant], you're 26 today?

[APPELLANT]: Correct.

THE COURT: And I'm looking at your colloquy for a waiver of jury trial.

MR. GALLOWAY: May I have one second, Your Honor?

THE COURT: Sure.

MR. GALLOWAY: May I have a tissue? Oh, I'm sorry. I didn't hear what he said.

THE COURT: Absolutely.

MR. GALLOWAY: [Appellant] just wanted a tissue, Your Honor. I thought he was asking me another question.

THE COURT: No problem. If you need time, that's fine.

MR. GALLOWAY: Thank you.

THE COURT: I'm looking at your, it is a four-page document entitled, "colloquy for waiver of jury trial."

[APPELLANT]: Yes.

THE COURT: Does this look familiar to you?

[APPELLANT]: Yes.

THE COURT: Did you complete this with Mr. Galloway—

[APPELLANT]: Yes.

THE COURT: -- today?

[APPELLANT]: Yes.

THE COURT: Did you have enough time to go through the whole thing with him?

[APPELLANT]: Colloquy, yes.

THE COURT: Paragraph by paragraph?

[APPELLANT]: Yes.

THE COURT: Is there anything in this that you don't understand or you would like more clarity on?

[APPELLANT]: No.

THE COURT: Is that your signature on the back page where it says, "[Appellant]"?

[APPELLANT]: Yes.

THE COURT: And this document is chockfull of important rights; would you agree with me in that statement?

[APPELLANT]: Yeah.

THE COURT: So you understand that you, on the charges on this docket 2060 of '20, you have the right to a trial by jury; you understand that?

[APPELLANT]: Yeah.

THE COURT: And that would be all 12 people would have to agree to find you guilty; you understand that?

[APPELLANT]: Yeah.

THE COURT: And in going through each and every right contained in this paperwork with Mr. Galloway, at the end of all, that you were indicating to me that you wish to proceed with what we call a bench trial. So you are waiving your right to a jury; is that accurate?

[APPELLANT]: Yeah. Yes.

THE COURT: And that is your decision, not Mr. Galloway's. Correct?

[APPELLANT]: It's both of our decision.

THE COURT: And today, [Appellant], are you under the influence of any drugs or alcohol?

[APPELLANT]: No, I am not.

THE COURT. I mean have you taken any prescription medication?

[APPELLANT]: No. I did not.

THE COURT: Do you suffer from any kind of problem or condition that could impact your ability to understand what's happening in court?

[APPELLANT]: I have a comprehension disorder but I just have to really pay attention and focus. I may ask someone to repeat things a few times.

THE COURT: So is that a disorder, have you been —

[APPELLANT]: Documented?

THE COURT: -- dealing with that through your lifetime?

[APPELLANT]: Yes.

THE COURT: Did you deal with it all through school?

[APPELLANT]: Yes.

THE COURT: And did you graduate from high school?

[APPELLANT]: Yes.

THE COURT: So since I know about this, I want to tell you, that it's not a problem at all if any time during this trial, someone says something that you feel you need repeated, you just let Mr. Galloway know and we will make sure that happens.

[APPELLANT]: It might not be repeated, it might need to be explained different sometimes.

THE COURT: That's fine, too.

[APPELLANT]: All right.

THE COURT: So if you need that to happen, for a break for Mr. Galloway to explain something to you, I will give you that every single time.

[APPELLANT]: All right. Thank you.

THE COURT: Because it is important that you understand what's going on and that you participate in your own defense.

[APPELLANT]: Okay.

THE COURT: So again, that will not be a problem. You just tell Mr. Galloway and I'll stop and I'll give Mr. Galloway and you a chance to do what you need to assist your client with his comprehension.

MR. GALLOWAY: Thank you.

THE COURT: Fair? All right.

MR. GALLOWAY: Yes.

THE COURT: Is there anything at all, sir, in this document that you would like further explanation on?

[APPELLANT]: No.

THE COURT: Commonwealth, where did you go?

MS. EGUNSOLA: Yes, ma'am.

THE COURT: Anything that you wish to add for the record or ask?

MS. EGUNSOLA: Nothing else, Your Honor.

THE COURT: I am satisfied that [Appellant] is executing in a knowing, voluntary and intelligent fashion his right to waive his right to trial by jury and proceed today with a bench trial, so I am going to permit that. And to that end, you may go ahead and take your seat.

[APPELLANT]: Thank you.

THE COURT: [Appellant], do you need to write things down to help with your comprehension? Is that part of it or no?

[APPELLANT]: No.

MR. GALLOWAY: It could be, Your Honor. I'm sorry to interrupt but I was going to address that. I understand the sheriffs have their policy but I was going to request that the shackles be removed during the course of the bench trial.

- 12 -

THE SHERIFF: Only his writing hand. We don't remove them both while in here.

THE COURT: Are you right- or left-handed?

[APPELLANT]: I'm right.

THE COURT: So if he could, if you could free his right hand so that he can have access to a writing instrument and paper and so forth just because I think that may assist in terms of the comprehension issue.

MR. GALLOWAY: Thank you, Your Honor.

(Bench Trial Transcript, 3/7/23, N.T. 8-13).

Thus, the [trial] court conducted a colloquy with [Appellant] regarding his decision to waive his right to a jury trial that demonstrated that [Appellant] understood the court's questions and was able to answer appropriately. [Appellant] was able to recognize what deficiencies he might have and to advise the court how to accommodate them during the trial. [Appellant] responded to the court intelligently and respectfully. The court noted that it had had the opportunity to observe [Appellant] during the previous trial term execute two plea agreements in two other cases and that the court did not observe anything on the part of [Appellant] that would suggest his ability to comprehend the nature of the charges and proceedings against him and to help in his own defense were in any way impaired. The court had the benefit of a psychiatric evaluation in July of 2022 concluding that [Appellant] was competent to be tried at that time. There was no information presented to the court that anything had changed between the time of the evaluation and the time of trial. Indeed, as we stated, the court had the opportunity to observe and interact with [Appellant] in the previous trial term and did not perceive any deficiencies in his ability to participate in the proceedings. [Appellant's] counsel agreed at the time of the bench trial that [Appellant] met the standard for competency to be tried. [Appellant] took the stand in his own defense at trial. He showed a remarkable degree of detail in his recollection of the events that brought him to court. He testified in a cogent and cohesive manner, responding properly to the questions of counsel and demonstrating an appropriate affect at all times. There is simply no evidence on the record to support the conclusion that [Appellant] at any time relevant to these proceedings lacked the competency to stand trial. Accordingly, we would respectfully

- 13 -

submit that [Appellant's] challenge to his competency to stand trial as set forth in paragraph 2 of his concise statement has no merit and should, respectfully, be denied and dismissed.

Trial Ct. Op., 5/29/24, at 11-19 (some formatting altered).

We reiterate that Appellant is presumed competent to stand trial, and that it is Appellant's burden to prove, by a preponderance of the evidence, that he is not competent. *See Blakeney*, 108 A.3d at 752; *J. Smith*, 17 A.3d at 899-900. Specifically, Appellant was required to "establish that he was either unable to understand the nature of the proceedings against him or to participate in his own defense." *J. Smith*, 17 A.3d at 900 (citations omitted). Further, we extend "great deference to the trial judge's determination as to competency because [the trial court] had the opportunity to observe directly a defendant's behavior." *Flor*, 998 A.2d at 617 (citation omitted).

Here, there is no indication that Appellant was incapable of understanding the proceedings or unable to participate in his defense. *See J. Smith*, 17 A.3d at 900. The trial court ordered Appellant to undergo a competency evaluation, Dr. Rodgers found that Appellant was competent, and after consideration of Dr. Rodgers's report and on-the-record questioning, the trial court concluded that Appellant was competent. *See* Trial Ct. Op., 5/29/24, at 19. Further, Appellant's prior counsel agreed that Appellant was competent on the record prior to trial.[7] *See* N.T. Trial, 3/7/23, at 7. After

_____

[7] To the extent that Appellant concludes that prior counsel may have been ineffective for failing to challenge Dr. Rodgers's findings or the trial court's
*(Footnote Continued Next Page)*

review, we conclude on this record that Appellant did not meet his burden to establish that he was not competent to stand trial, and we discern no abuse of discretion in the trial court's conclusion that Appellant was competent. *See* *Blakeney*, 108 A.3d at 752; *J. Smith*, 17 A.3d at 899-900. Accordingly, Appellant is not entitled to relief. *See J. Smith*, 17 A.3d at 899-900.

### Jury Trial Waiver

Appellant's next issue also involves his competency. *See* Appellant's Brief at 13. Specifically, Appellant argues that the questions "surrounding his competency" invalidated his waiver of his right to a jury trial. *See id.* at 6, 14.

The Commonwealth argues that this issue is meritless. *See* Commonwealth's Brief at 8. The Commonwealth contends that Appellant was competent and that the record, which includes both a written and verbal colloquy, reflects that Appellant made a voluntary, knowing, and intelligent waiver of his right to a jury trial. *See id.* at 9-16.

_____

conclusion concerning competency, we note that claims of ineffective assistance of counsel are not properly before this Court at this juncture, and such claims are left to collateral review under the PCRA. *See* *Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (stating that "as a general rule, a petitioner should wait to raise claims of ineffective assistance of trial counsel until collateral review"). In other words, questions concerning whether prior counsel was ineffective in agreeing that Appellant was competent to stand trial must await collateral review as they do not satisfy any exceptions to the general rule that such claims must be raised in a collateral proceeding under the PCRA. *See id.*; *see also Commonwealth v. Delgros*, 183 A.3d 352, 360-61 (Pa. 2018) (providing exceptions to the general rule that are not present in the instant case).

- 15 -

The first part of Appellant's argument is that he was not competent and therefore not competent to waive his right to a jury trial. **See** Appellant's Brief at 14. Other than bald, boilerplate assertions, Appellant fails to provide evidence that he was not competent, nor does he describe how the trial court abused its discretion in concluding that Appellant was competent to waive his right to a jury trial. Appellant states only that Appellant had been treated for mental illness, and that there were "indicators" concerning competency, and that the trial court should have explored Appellant's competency further. **See id.**

A defendant who is competent to stand trial is competent to waive constitutional rights such as the right to a jury trial. **Godinez v. Moran**, 509 U.S. 389, 396-402 (1993). Pursuant to **Godinez**, the competency standard for waiving one's constitutional rights such as by pleading guilty or waiving the right to counsel is not higher than the competency standard for standing trial. **Commonwealth v. Jermyn**, 709 A.2d 849, 861 (Pa. 1998); **see also Commonwealth v. Starr**, 664 A.2d 1326, 1339 (Pa. 1995) (citing **Godinez** and noting that the competency standard for waiving the right to counsel is the same as the competency standard for standing trial). Here, the trial court concluded that the competency standard for waiving the right to a jury trial is the same as the competency necessary to stand trial. **See** Trial Ct. Op., 5/29/24, at 6-7, 19-20 (citing, *inter alia*, **Godinez**, holding that a defendant

who is competent to stand trial is competent to waive constitutional rights such as the right to a jury trial).[8]

As discussed, we discern no error or abuse of discretion in the trial court concluding that Appellant was competent to stand trial. Similarly, based on the same competency standard, we discern no abuse of discretion in the trial court's determination that Appellant was competent to waive his right to a jury trial. *See Commonwealth v. Mitchell*, 2270 EDA 2023, 2025 WL 66510, at *3 (Pa. Super. filed Jan. 10, 2025) (unpublished mem.) (finding no abuse of discretion in the trial court's determination the appellant was competent to stand trial and waive his right to a jury trial where the appellant presented no evidence that he was not competent and did not object to the finding of competency from his pretrial competency evaluation).[9]

Further, it is well settled that a defendant may waive the right to a jury trial and proceed to trial before a judge, provided that the waiver is knowing, intelligent, and voluntary. *Commonwealth v. Houck*, 948 A.2d 780, 787 (Pa. 2008). To be valid, a jury waiver must be knowing, intelligent, and

_____

[8] *See also Commonwealth v. Brooke*, 7 Pa. D. & C. 5th 129, 134 (C.C.P. Carbon 2008) (stating that "[t]he competency standard for evaluating a criminal defendant's ability to stand trial and his ability to waive counsel and enter a plea are the same" (citing *Godinez*, 509 U.S. at 397-98)); *Commonwealth v. Anderson*, 40 A.3d 1245, 1249 n.5 (Pa. Super. 2012) (explaining that the "decisions of the Court of Common Pleas are not binding precedent; however, they may be considered for their persuasive authority" (citations omitted)).

[9] *See* Pa.R.A.P. 126(b) (noting that unpublished memorandum decisions of the Superior Court filed after May 1, 2019, may be cited for their persuasive value).

voluntary, and the defendant must be aware of the essential protections inherent to a jury trial. *See Commonwealth v. Mallory*, 941 A.2d 686, 696 (Pa. 2008). The essential protections "basic to the concept of a jury trial, are the requirements that the jury be chosen from members of the community (a jury of one's peers), that the verdict be unanimous, and that the accused be allowed to participate in the selection of the jury panel." *Id.* at 696-97 (citations omitted and formatting altered). Additionally, our Rules of Criminal Procedure provide that before a defendant may waive their right to a jury trial, the trial court must:

> ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. The decision to grant or deny a bench trial is left to the discretion of the trial court. *Commonwealth v. Merrick*, 488 A.2d 1, 3 (Pa. Super. 1985). Further, "it is the defendant's burden, and not the Commonwealth's, to establish that a jury waiver is invalid." *Houck*, 948 A.2d at 788 (citations omitted).

Here, the trial court conducted the verbal colloquy stated above and explained:

> [T]here can be no dispute that [Appellant] made a knowing, voluntary and intelligent decision to waive his right to a jury trial. In addition to the verbal colloquy set forth [above], [Appellant] executed a four (4) page written colloquy for waiver of jury trial. [*See* (Written Colloquy for Waiver of Jury Trial, 3/7/23, at 1-4)].

- 18 -

\* \* \*

Although the undersigned and the Assistant District Attorney did not sign the written colloquy, the undersigned conducted a verbal colloquy on the record, the Commonwealth voiced no objection on the record, and the undersigned granted [Appellant's] request to waive his right to a jury trial. The Commonwealth de facto agreed to waive its right to a jury trial and this court expressly granted both parties' waivers.

It is apparent from viewing the written colloquy for waiver of jury trial that [Appellant] was advised of the essential ingredients inherent to a jury trial, as discussed above, in great detail. With supplementation by the verbal on-the-record colloquy between the court and [Appellant], it is more than evident that [Appellant's] waiver of his right to a jury trial was made knowingly, intelligently, and voluntarily. [Appellant] was determined to be competent; he was advised of his rights; he was advised of what he could expect in terms of procedure in either case; and no one promised or threatened him with anything to induce the waiver of his right to a jury trial. [Appellant] repeatedly affirmed to the court in writing and on the record that he wished to waive his right to a jury trial and proceed to trial before the undersigned sitting without a jury. The written colloquy for waiver of jury trial is *prima facie* proof of the validity of [Appellant's] waiver. [Appellant] has presented no evidence to overcome the *prima facie* validity of [Appellant's] waiver. He has failed to meet his burden.

\* \* \*

In the present matter, the great detail of the written colloquy for waiver of jury trial, in combination with the court's verbal colloquy on the record and the court's ability to observe [Appellant's] appropriate demeanor demonstrates that [Appellant's waiver was knowing, intelligent, and voluntary, and Appellant was aware of the essential protections inherent to a jury trial]. [Appellant] affirmed in his written colloquy that no one had promised or threatened him in any way to induce him to waive his right to a jury trial. The written colloquy, together with the on-the-record examination conducted by the court, leaves no question that [Appellant] fully comprehended the nature of the right he was relinquishing and the consequences of that choice.

Trial Ct. Op., 5/29/24, at 23-29 (some formatting altered).

After review, we discern no error of law or abuse of discretion in the trial court's conclusion that Appellant was competent and validly waived his right to a jury trial. *See Blakeney*, 108 A.3d at 752; *J. Smith*, 17 A.3d at 899-900; *Houck*, 948 A.2d at 788. The record reflects in both the written and verbal colloquies that the trial court specifically addressed the essential protections of a jury trial including Appellant's rights, how a jury is selected, the requirement of a unanimous verdict, and the jury selection process. *See Mallory*, 941 A.2d at 696-97. The record reflects that Appellant and his counsel agreed that Appellant understood the waiver of his right to a jury trial, and that Appellant knowingly, voluntarily, and willingly waived his right to a jury trial, and therefore, Appellant has failed to establish that his jury waiver was invalid. *See Houck*, 948 A.2d at 788 (stating that "it is the defendant's burden, and not the Commonwealth's, to establish that a jury waiver is invalid" (citations omitted)). For these reasons, Appellant is not entitled to relief on this claim.

## Sentencing

Next, Appellant challenges the discretionary aspects of his sentence. *See* Appellant's Brief at 17-18. Specifically, Appellant argues "[t]here is no indication the record that the trial court sufficiently considered mitigating evidence such as Appellant's traumatic background or his mental health. As such, the trial court abused its discretion in imposing an excessive sentence without consideration of mitigating evidence." *Id.* at 18.

- 20 -

A claim that the trial court failed to consider mitigating factors is a challenge to the discretionary aspects of sentencing. *See Commonwealth v. Rhoades*, 8 A.3d 912, 918-19 (Pa. Super. 2010). "[C]hallenges to the discretionary aspects of sentencing do not entitle an appellant to review as of right." *Commonwealth v. Derry*, 150 A.3d 987, 991 (Pa. Super. 2016) (citations omitted). Before this Court may review to a challenge to the discretionary aspects of a sentence, the appellant must (1) preserve the issue at sentencing or in a post-sentence motion; (2) file a timely notice of appeal; (3) include a concise statement of the reasons relied on for appeal pursuant to Pa.R.A.P. 2119(f); and (4) raise a "substantial question that the sentence is appropriate under the [S]entencing [C]ode." *Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa. Super. 2013) (citation omitted).

Here, Appellant filed identical post-sentence motions at each of the three related trial court dockets: the instant case (2060-2020), and the two related cases (2059-2020 and 4189-2019). Appellant's post-sentence motion provided only as follows:

1. [Appellant] was sentenced to an aggregate 6-23 years with accurate credit for time served of a little more than 3 years. The sentence was for three different assault cases. Two were after open guilty pleas, and the third was after verdict in a bench trial.

2. The [trial c]ourt imposed permissible (that is guideline-allowed) sentences in each of [the] 8 counts as to which a sentence could be imposed. [Appellant] accepts the [trial c]ourt's sentencing authority as to the minimums imposed and acknowledges its requirement that he be jailed for punitive reasons and too acknowledges that he was arrested on two cases while he was out on bail for the 1st one.

- 21 -

[Appellant] accepts that he must serve a sentence and that the [trial c]ourt's selection of a state prison is proportionate to his criminal conduct.

3. [Appellant] thinks the maximums imposed are a little harsher than might have been necessary to deliver imposed [sic]. He offers no new evidence or information on which to argue the [trial c]ourt's sentences as imposed.

WHEREFORE, [Appellant] requests that [the trial court] consider his request in particular whether the [trial c]ourt might attain its purpose with a shorter potential maximum sentence.

Post-Sentence Mot., 8/1/23, at 1-2 (some formatting altered).

We note that in its Rule 1925(a) opinion, the trial court concluded that Appellant's challenge to the trial court's alleged failure to consider mitigating factors is waived for failing to raise it in his post-sentence motion. *See* Trial Ct. Op., 5/29/24, at 30-31. After review, we agree with the trial court's conclusion.

Appellant's post-sentence motion is vague, and it does not state which docket, which count or counts, or which sentence he purports to challenge. Importantly, although Appellant argues the that the trial court failed to consider mitigating factors when fashioning the sentence, Appellant did not mention mitigating factors in his post-sentence motion or on the record at the time of sentencing. Therefore, we conclude that this issue is waived. *See Carrillo-Diaz*, 64 A.3d at 725.

## Merger

Finally, we must address merger. Merger implicates the legality of the sentence, and the legality of a sentence is an issue this Court can raise *sua*

*sponte*. ***See Commonwealth v. Watson***, 228 A.3d 928, 941 (Pa. Super. 2020); ***see also Commonwealth v. Tucker***, 143 A.3d 955, 960 (Pa. Super. 2016) ("[a]n illegal sentence must be vacated" (citation omitted)). Further, our standard of review is *de novo* and our scope of review is plenary. ***See Watson***, 228 A.3d at 941.

Section 9765 of the Sentencing Code provides as follows:

No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.

42 Pa.C.S. § 9765. "Section 9765 does not require an evaluation of the specific facts as applied to the elements. Had the General Assembly so required, it would have included language instructing us so. Instead, the Legislature's guidance dictates that our analysis begins and ends with the statutory elements of each offense." ***Commonwealth v. Edwards***, 256 A.3d 1130, 1137 (Pa. 2021) (footnote omitted).

Here, Appellant was charged with the aggravated assault and simple assault of Officer Navarra and Lieutenant Doyle. ***See*** Crim. Information, 8/5/20, at 1-2. At the bench trial, the judge found Appellant not guilty of all assault charges as to Lieutenant Doyle and found Appellant guilty of both aggravated and simple assault as to Officer Navarra. ***See*** N.T. Trial, 3/7/23, at 117; Verdict Sheet, 3/7/23, at 1-2. Moreover, the record clearly reflects that Appellant's actions against Officer Navarra resulted from one criminal

episode in which Appellant struck and kicked the officer when Appellant was being transported to Chester County prison. *See* N.T. Trial, 3/7/23, at 21-44.

Specifically, Appellant was convicted of the simple assault on Officer Navarra under 18 Pa.C.S. § 2701(a)(1) and the aggravated assault on Officer Navarra under 18 Pa.C.S. § 2702(a)(3). Section 2701(a)(1) provides that a person is guilty of simple assault if he "attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another[.]" *Id.* Section 2702(a)(3) provides that a person is guilty of aggravated assault if he "attempts to cause or intentionally or knowingly causes bodily injury to any of the officers, agents, employees or other persons enumerated in subsection (c), in the performance of duty[.]" *Id.* The elements of simple assault under Section 2701(a)(1) are subsumed within the elements of aggravated assault under Section 2702(a)(3).

Further, the trial court imposed a sentence of "no further penalty" for simple assault, and this Court has held that a sentence of "no further penalty" constitutes a sentence. *See Commonwealth v. Farrow*, 168 A.3d 207, 215 (Pa. Super. 2017) (holding that "since a court may impose 'guilt without further penalty' as a sentence under 42 Pa.C.S. § 9721(a)(2)," we shall treat such dispositions "as sentences for purposes of our double jeopardy analysis"), *disapproved on other grounds by Commonwealth v. Hill*, 238 A.3d 399 (Pa. 2020); *see also* 42 Pa.C.S. § 9721(a)(2).

Because Appellant's sentences for aggravated assault and simple assault should have merged for purposes of sentencing, the sentence of no

further penalty for simple assault must be vacated in that it is an illegal sentence. ***See Farrow***, 168 A.3d at 215; ***see also Commonwealth v. Seif***, 943 WDA 2018, 2020 WL 5423953, at *5 (Pa. Super. filed Sept. 10, 2020) (unpublished mem.).

Although we vacate the simple assault sentence because it is an illegal sentence, we do not disturb Appellant's conviction for this offense. ***Tucker***, 143 A.3d at 958 (affirming conviction but holding that illegal sentence must be vacated). We need not remand for re-sentencing because our decision does not upset the trial court's sentencing scheme, which consisted of entirely concurrent sentences. ***See Commonwealth v. Thur***, 906 A.2d 552, 569-70 (Pa. Super. 2006) (appellate court need not remand for resentencing when it can vacate illegal sentence without upsetting trial court's overall sentencing scheme).

Convictions for aggravated assault, simple assault, and resisting arrest affirmed. Judgments of sentence for aggravated assault and resisting arrest affirmed. Sentence for simple assault vacated. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 3/18/2025

- 25 -